# EXHIBIT 4

Filed 6/20/18

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

COURT OF APPEAL – SECOND DIST.

**FILED**

Jun 20, 2018

JOSEPH A. LANE, Clerk

jzelaya          Deputy Clerk

| | |
|---|---|
| LINCOLN STUDIOS, LLC et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>P6 LA MF HOLDINGS SPE, LLC et al.,<br><br>Defendants and Respondents. | B276726<br><br>(Los Angeles County<br>Super. Ct. No. BC551551) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Suzanne G. Bruguera, Judge. Affirmed in part, reversed in part and remanded.

Miller Barondess, Louis R. Miller, James Goldman and A. Sasha Frid; Greines, Martin, Stein & Richland, Timothy T. Coates and Gary J. Wax for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, James P. Fogelman, Jay P. Srinivasan, Kahn A. Scolnick and Marysa Lin for Defendants and Respondents.

_____

Exhibit 4
334

Appellants Lincoln Studios, LLC, Neil Shekhter, individually, Neil Shekhter, as Trustee of The NMS Family Living Trust Dated September 3, 1991 (2000 Restatement), Margot Shekhter, individually, Margot Shekhter, as Trustee of The NMS Family Living Trust Dated September 3, 1991 (2000 Restatement), The NMS Family Living Trust Dated September 3, 1991 (2000 Restatement), NMS Capital Partners, LLC, NMS Capital Partners I, LLC, NMSLUXE375, LLC, MNSLUXE415, LLC and 9901 Luxe, LLC appeal from a judgment of dismissal resulting from an order sustaining a demurrer without leave to amend.

Appellants contend that the Third Amended Complaint (TAC) was not a sham pleading and that it adequately alleges causes of action for breach of contract, fraud and breach of fiduciary duty. In the alternative, they argue it was an abuse of discretion to deny leave to amend.

We conclude the court erred in dismissing the TAC as a sham pleading and the tort claims as duplicative of the contract claims. We affirm the ruling sustaining the demurrer, without leave to amend, to the first cause of action for breach of Article 6 on the ground Article 6 is not reasonably susceptible to an interpretation that it provides a right in the appellants to acquire the interest of the respondents, but reverse the ruling as to the remaining causes of action. The matter is remanded to the trial court with instructions to permit the appellants an opportunity to amend the surviving claims.

## DISCUSSION

Appellants appeal from an order and judgment of dismissal after the trial court sustained, without leave to amend, respondents' demurrer to the TAC. They argue (1) that the TAC

Exhibit 4
335

is not a sham pleading because it makes permissible alternative allegations as to which version of the parties' agreement is operative, and therefore is not inconsistent with prior pleadings; (2) it was an abuse of discretion to rule that the complaint failed to allege an enforceable contract because the first version of the agreement is attached as an exhibit; (3) it was error to sustain the demurrer without leave to amend as to the second cause of action for breach of section 8.2 of the agreement because adequate supporting facts are alleged in the prefatory paragraphs of the complaint and are incorporated into the cause of action; (4) the fraud cause of action was erroneously dismissed on the ground that it was superseded by contract claims under Delaware law; and (5) that the breach of fiduciary duty claim was wrongfully dismissed as barred by the agreement's fiduciary duty disclaimer.

## BACKGROUND

**A.    *The Parties and the Joint Venture Agreement.***

Appellant and plaintiff Neil Shekhter (Shekhter) owns and develops residential and commercial real estate projects through various related entities of which he is a principal, including NMS Capital Partners I, LLC (collectively, appellants or NMS). Respondent AEW Capital Management (AEW) is a large hedge fund that manages real estate assets. Respondent Eric Samek (Samek) is an executive at AEW who negotiated the terms of a joint venture between AEW and Shekhter.

On September 8, 2010, AEW, as the Investor Member, and NMS Capital Partners I, LLC, as the Operating Member, entered into a written joint venture agreement (JVA) to develop and own properties in the Los Angeles area through a new entity called P6 LA MF Holdings I, LLC.

Exhibit 4
336

Two provisions of the agreement are important to this appeal.  The first, Article 6, is entitled "Distributions."[1]  It defines how profits are to be distributed at each of seven successive stages.  In the final stage, " . . . one hundred percent (100%) shall be distributed to Operating Member if within five (5) years from the date hereof Investor Member receives all amounts it is entitled to receive under Section 6.1(i) through (vi)."  In section 6.1(vi), the Investor Member is entitled to receive an "IRR of twenty-four percent (24%), and (ii) aggregate distributions under this Section 6 equal to the product of 1.75 and Investor Member's aggregate Capital Contributions."

The second provision is Article 11, entitled "Buy/Sell."  It provides that after five years, either party may buy the other party's interest pursuant to a specified procedure.

Shortly before the three year anniversary of the joint venture, Shekhter sent a letter to Samek proposing for AEW's "consideration and approval" that NMS pay AEW all it is entitled to receive under Article 6 in return for AEW's withdrawal as a member of the joint venture.  When AEW ignored the letter, Shekhter sent another letter proposing the same transaction, which also was ignored.  By email of November 18, 2013, Shekhter asked Samek why AEW had not responded to his letters and on November 22, 2013, Samek's return email stated that the Operating Member did not have the  right to acquire the Investor Member's interest under the agreement.

In 2014 and 2015, AEW also rejected various offers from third parties and the Operating Member to purchase the entire

---

[1]    The court refers to various provisions of the JVA as "Articles," which is the terminology used in the JVA.  However, the parties sometimes use "Section" in lieu of "Article."

4

Exhibit 4
337

joint venture portfolio for $500 million or more.  Then, just a few days before the five-year anniversary of the venture, AEW declared an Event of Default under the JVA and sent NMS Capital Partners I, LLC a notice removing it as the Operating Member.  This litigation ensued.

**B.    *Appellants' Complaints.***

In July 2014, appellants sued the law firm of DLA Piper, LLP, the counsel retained by AEW during the negotiation and drafting of the JVA.  Appellants asserted that counsel conducted themselves fraudulently in drafting the Operating Member's right to "buy-out" the Investor Member in the JVA.

Respondents were added to the First Amended Complaint (FAC).  It alleged that the parties reached an agreement in principle in 2010 to form a joint venture which included a right in the Operating Member to "acquire AEW's interest at any time within 5 years (consistent with [Shekhter's] plan to implement the acquisition at the 3 year anniversary), via various mechanisms, including rights to 'buy-out,' 'buy/sell,' 'distribution,' 'monetization' and/or a combination thereof, as long as AEW received its investment plus the greater of its investment multiplied by 1.75 or a 24% IRR."  The parties call this amount the "monetization amount."  In September of 2010, the parties executed Version 1 of the JVA "which contained language consistent with the acquisition rights that [Shekhter] had negotiated."

The FAC somewhat inconsistently also alleged that when Shekhter received Version 1 of the JVA, he "noticed that [it] appeared to contain a mistake, i.e., that the buy/sell provisions stated that the buy/sell procedure could occur after 5 years, instead of after 3 years," and that when he raised the issue with

Exhibit 4
338

Samek, Samek said that he "would ask [counsel] to revise Version
1 so that it stated that the 'buy/sell' acquisition mechanism could
be triggered at the 3 year anniversary, instead of after 5 years."
Thereafter, in September 2010, AEW delivered a "corrected"
Version 2 of the JVA which stated, according to appellants, that
"the Operating Member could buy-out and otherwise acquire the
interests of AEW under various mechanisms within 5 years, and
as of the 3 year anniversary of the formation of the joint venture,
which were consistent with [Shekhter's] plan, which he
repeatedly articulated and which AEW repeatedly confirmed.
Version 2 also specifically expressed that the 'buy/sell' acquisition
mechanism could occur after 3 years."  The correction in Version
2 was made in Article 11 simply by changing one word; that is, by
changing the word "five" to "three" when stating the year at
which the "buy/sell" option became available.

Appellants also plead that respondents subsequently
fabricated an unauthorized Version 3 of the JVA which removed
language "to the effect" that the Operating Member could trigger
the buy/sell provision after three years and altered aspects of the
waterfall distribution provision.  Appellants plead that neither
Version 1 nor Version 3 are valid or enforceable.  However, they
also plead "in the alternative" that if the court or trier of fact
disagrees, then appellants reserve the right to argue no version of
the JVA is enforceable, requiring the rescission and cancellation
of the JVA or reformation of the document to reflect their
agreement.

Demurrers to the FAC were sustained with leave to amend.

The Second Amended Complaint (SAC) contained 31 causes
of action asserted against the same defendants.  Appellants once
again alleged they had been defrauded and misled into signing a

Exhibit 4
339

JVA that contained a five-year "buy-out" provision, instead of a three-year provision.  Appellants continued to deny the validity of the various versions of the JVA, including "Version 1," while alleging "but if any version is in effect it is Version 2."  They repeated their allegation that after conversation with Samek, Version 2 was created to correct the mistake in Version 1 by "specifically express[ing] that the 'buy/sell' acquisition mechanism could occur after 3 years."  This is a reference to the change of the word "five" to "three" in Article 11.

On December 2, 2015, demurrers to the SAC were sustained, with leave to amend, on several grounds.  Appellants once again alleged Version 2 "is the only valid [JVA]," and stated that "had AEW acknowledged the Operating Member's right to buy-out or that Version 3 was not the true operating agreement and that if any Version was in effect it was Version 2, Plaintiffs would have suffered no damage."  Since the causes of action for fraud, negligent misrepresentation and breach of fiduciary duty were premised on allegations that the Operating Member was defrauded into signing a JVA with a five-year Buy/Sell provision when it believed the agreement it signed contained a three-year provision, the  court found the causes of action failed because Version 2, the operative version according to appellants, contained the three-year provision.  The court also found that plaintiffs failed to allege sufficient facts to constitute a cause of action for breach of Version 2.

Before appellants filed the TAC, controversy arose concerning the validity of Version 2.  Respondents filed a cross-complaint alleging that during the negotiation of the JVA the Operating Member had specifically requested the five-year buy/sell period in Article 11, that Version 2 containing the three-

7

Exhibit 4
340

year buy/sell period and other documents relating to the joint
venture properties were forgeries created by appellants, and that
the Operating Member breached the JVA in various ways.

The TAC was filed on January 13, 2016. At 27 pages, it is
vastly streamlined from prior versions which boasted 232 (FAC)
and 278 pages (SAC), respectively, and over 30 causes of action
each. It contains 20 pages of factual background, incorporates
those allegations into each cause of action and then alleges only
six causes of action in a conclusory fashion.

The first cause of action of the TAC alleges the Investor
Member breached Article 6 of the JVA by refusing to accept the
offer of NMS Capital Partners I, LLC of $106 million to
"monetize" or "take-out" AEW's interest, which sum was 1.75
times its net invested capital of approximately $60 million. The
second alleges breach of the provision in the JVA which
"prohibits the Investor Member from taking any act in
contravention" of the JVA and lists nine specific breaches, one of
which involves respondents' repudiation of NMS Capital's right
to serve a Buy/Sell Notice.[2] The third alleges the "AEW

---

[2]    The TAC alleges that in October 2015, Shekhter contacted
Samek, pointed out that the five year anniversary had passed
and stated that he wanted to know what AEW's position was
regarding NMS Capital Partners I, LLC's buy/sell rights since it
would be time consuming and costly to make arrangements to
complete a purchase of AEW's interest. This is apparently an
indication of an intent to exercise the "buy/sell" rights clearly
provided in Article 11. Samek responded that AEW had removed
NMS Capital Partners I, LLC as Operating Member and
therefore, that it no longer had any such rights. This allegation
of a violation of Article 11 at the five-year mark appears to be the
breach alleged in paragraph 42g, not any claim regarding the

Exhibit 4
341

Defendants" made misrepresentations concerning, among other things, NMS's "right to monetize the Investor Member" which induced appellants to enter into the JVA.  The fourth alleges respondents did not intend to honor their promise to allow appellants to take-out or monetize AEW's interest.  The fifth claims that AEW and Samek breached their fiduciary duties to appellants by operating the joint venture to diminish NMS's interest and to misappropriate the joint venture's assets for themselves.  The last cause of action for constructive fraud is identical to the fifth cause of action for breach of fiduciary duty.

Gone were virtually all references to Article 11, its "buy/sell" and "buy-out" terminology and the controversy over whether Article 11 rights were available at three years or at five years, all of which had figured prominently in the prior iterations of the complaint.  Instead, the TAC asserted that Article 11 was "not implicated here, because [Shekhter], in 2013, exercise [sic] his right under Section 6 of the JVA to monetize, or take-out, AEW after three years."  The focus is on a three-year "take-out" right alleged to originate in Article 6, along with breaches of other unspecified provisions in the JVA and tort claims premised upon the "take-out" right under Article 6 and its "buy/sell" right at the fifth anniversary under Article 11.

The TAC no longer identified Version 2, or any version, as the operative agreement.  Instead, it states it makes no difference which version is operative because all versions are the same with respect to the pertinent portions of Article 6, but it attaches Version 1 as an exhibit.  It no longer seeks rescission or reformation of the JVA, asking instead for enforcement of NMS's

---

right to "take-out" AEW under either Article 6 or 11 at the three-year mark.

Exhibit 4
342

2013 "offers of tender to monetize AEW's investment in the Joint Venture pursuant to Section 6 of the JVA," for compensatory damages in excess of $100 million, for punitive damages, indemnification for potential tax liability for AEW's filing of fraudulent tax returns, and interest, attorneys' fees and costs of suit.

On April 5, 2016, the court issued an order sustaining respondents' demurrer to the TAC without leave to amend and on June 7, 2016, the court executed respondents' proposed order reflecting that ruling. The June 7, 2016 order stated the TAC was a sham pleading that "change[d] critical facts . . . and omit[ted] certain facts, without offering any explanation for the discrepancies." The order also stated other independent bases for rejecting each specific cause of action. It construed the TAC to plead that no version of the JVA is effective and remarked that even if appellants' claims were based on only one version, they failed to identify which version it was. Leave to amend was denied on the basis that appellants had already been given three opportunities to state their claims and amendment would be futile in light of the sham pleading findings.

This appeal followed on August 5, 2016.

## DISCUSSION

### A.    *Standards of Review*

A demurrer challenges only the legal sufficiency of the complaint, not the truth of its factual allegations. (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 922.) The "allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) The complaint is given a reasonable interpretation, reading it as

10

Exhibit 4
343

a whole and its parts in their context.  (*Blank v. Kirwan* (1985) 39
Cal.3d 311, 318.)

The court reviews de novo the trial court's conclusion that
the TAC fails to allege facts sufficient to state a cause of action.
(*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318; *Glaski v. Bank of
America* (2013) 218 Cal.App.4th 1079, 1089-1090; *Aguilera v.
Heiman* (2009) 174 Cal.App.4th 590, 595.)  All material facts
properly plead are treated as true, but contentions, deductions or
conclusions of law or fact are not.  (*Serrano v. Priest* (1971) 5
Cal.3d 584, 591.)

The trial court's denial of leave to amend is reviewed for an
abuse of discretion.  (*Vallejo Development Co. v. Beck
Development Co.* (1994) 24 Cal.App.4th 929, 946-947 (*Vallejo*).)
That discretion is abused if there is a reasonable possibility that
the defect in the complaint can be cured by amendment.  (*City of
Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865; *Greenberg
v. Equitable Life Assur. Society* (1973) 34 Cal.App.3d 994, 998.)

The court's denial of leave to amend based on the sham
pleading doctrine is also reviewed for an abuse of discretion.
(*Hendy v. Losse* (1991) 54 Cal.3d 723, 742; *Berman v. Bromberg*
(1997) 56 Cal.App.4th 936, 951.)

**B.    *The Court Has Jurisdiction to Hear This Appeal.***

Respondents argue this court lacks jurisdiction to hear this
appeal because it was prematurely noticed before any judgment
issued and while other issues were pending.  We are not
persuaded.  Code of Civil Procedure section 581d provides that
written orders dismissing an action which are signed by the court
and filed "shall constitute judgments" and "the clerk shall note
those judgments in the register of actions in the case."
Regardless of the trial court's intentions with respect to future

Exhibit 4
344

proceedings, its order sustaining the demurrer also ordered the case dismissed.  That order of dismissal was signed by the court and filed in the action and constituted a judgment under section 581d from which an appeal was properly taken.

C.   *The Sham Pleading Doctrine is Not Applicable.*

Respondents contend the trial court did not abuse its discretion by dismissing the entire TAC as a sham pleading because appellants contradicted or omitted without explanation detailed factual allegations in prior iterations of the complaint to evade the consequences of the prior demurrer rulings. Respondents contend there are no unexplained discrepancies and that the TAC is not a sham pleading.

When a party attempts to avoid defects in a prior complaint by omitting facts which made the previous complaint defective or by adding facts inconsistent with those of previous pleadings, the court may examine the prior complaint to determine whether the amended complaint is untruthful, or a sham.  "'A pleader may not attempt to breathe life into a complaint by omitting relevant facts which made his previous complaint defective.'"  (*Vallejo, supra,* 24 Cal.App.4th at p. 946, citation omitted.)  This rule "relates to inconsistent factual averments; it does not apply to alternative or even inconsistent pleading of the legal effect of the same facts." (*Lim v. The.TV Corp. Internat.* (2002) 99 Cal.App.4th 684, 690 (*Lim*).)  Inconsistencies with prior pleadings must be explained and if the pleader fails to do so, the court may disregard the inconsistent allegations.  (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 343; *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 426.)

The trial court found there were two unexplained discrepancies between the TAC and the two prior complaints.

Exhibit 4
345

One related to which version of the JVA controlled the parties' relationship and the other related to whether Article 6 or 11 controlled the buy-out or take-out process.

With respect to which version of the JVA controlled, the court found appellants alleged in the prior complaints that if any version of the JVA was controlling it was Version 2 and that the three-year buy-out right found only in that version was crucial to Shekhter's decision to enter into the joint venture, but inconsistently allege in the TAC that Version 2 and its three-year Buy/Sell provision in Section 11.1 are irrelevant because the right to take-out AEW is found in Article 6. Since appellants attached only Version 1 to the TAC, the trial court concluded that "plaintiffs are no longer alleging that 'Version 2' is the only valid version of the JV Agreement," that "[t]hese are contradictory factual allegations" which "[p]laintiffs fail to explain," and "as such they violate the sham pleading doctrine."

We disagree that there are contradictory allegations of fact. Allegations concerning which version of an agreement is "valid" and "enforceable" are legal conclusions which will be determined after receiving and considering evidence of all of the facts surrounding the creation of each version. While issues of fact may not be plead inconsistently, legal conclusions may. (*Lim, supra,* 99 Cal.App.4th at p. 690.) Because the determination will be made by the trier of fact, the FAC and SAC make alternative allegations to respond to whichever version of the agreement is found to be controlling.

The FAC and SAC both relied on, and attached, Version 2 of the JVA, but they also both alleged "in the alternative" that "Version 1 is enforceable and of impact" and that determining which version controls will have to be resolved by the trier of fact.

13

Exhibit 4
346

To the extent that appellants allege in the SAC that Version 1 is
unenforceable, it is expressly stated to be an alternative
allegation, and it is prefaced by a statement that "[p]laintiffs
believe that all 3 Versions give the Operating Member the right
to acquire the interests of AEW as of the 3 year anniversary of
the formation of the joint venture." It is alleged more specifically
in later paragraphs that appellants believe that both Version 1
and Version 2 give the Operating Member the right to acquire the
interests of AEW within five years, and "through various
mechanisms, allows the Operating Member to acquire the
interests of the AEW as of the 3 year anniversary." While it
might be frustrating to defend against a complaint that fails to
commit to the operative version of a contract, pleading in the
alternative is permissible.

Appellants also argue that regardless of which version is
the operative one, the relevant provisions to the action are the
same in all of them. Appellants attach Version 1 to the TAC, but
also allege that a Version 2 was created to correct a mistake in
Version 1, and that the language of Article 6 under which
appellants claim a "take-out" right is consistent across all
versions of the JVA such that it does not matter which one is
ultimately determined to be valid. Appellants explain these
allegations stem from their anticipation of argument from AEW
as to which version is operative and are designed to demonstrate
that appellants should prevail regardless of which version is
determined to be enforceable. It is clear from the FAC to the
TAC that appellants consistently advocate they have the right to
acquire AEW's interest within five years by the payment of 1.75
times AEW's net capital investment no matter which version of
the JVA is found to be legally operative. While changing

Exhibit 4
347

allegations as to which version of the JVA controls is not ideal, it
is a switch in legal theory that remains based on the same
general set of facts that are alleged consistently in each
complaint.

      The cases cited by respondents do not compel a different
result.  Each of them involves an allegation of inconsistent fact or
the omission of a dispositive fact, not a theory, solely to avoid the
successful argument in a prior demurrer or motion.  (See,
*Womack v. Lovell* (2015) 237 Cal.App.4th 772 [denial in answer to
cross-complaint that general contractor was licensed ignored as a
sham in light of plaintiff's complaint seeking recovery under
general contractor's license bond]; *Colapinto v. County of
Riverside* (1991) 230 Cal.App.3d 147 [summary judgment in favor
of County on grounds of  immunity affirmed; plaintiff's amended
pleading stating negligent operation of a motor vehicle, rather
than firefighter negligence, ignored as a sham pleading because it
"changed the facts and was made solely to avoid the summary
judgment"]; *Reichert v. General Ins. Co. of America* (1968) 68
Cal.2d 822 [amended complaint omitting allegation plaintiff
previously had been adjudicated bankrupt deemed to be a sham
pleading designed to avoid prior ruling on demurrer that he
lacked capacity to assert pre-bankruptcy claims due to
bankruptcy adjudication]; *Larson v. UHS of Rancho Springs, Inc.*
(2014) 230 Cal.App.4th 336 [operative complaint omitting
allegations that injuries were caused by negligent medical care
was deemed a sham because a trial court in a prior action had
relied on those facts in sustaining the doctor's demurrer]; *Amid v.
Hawthorne Community Medical Group, Inc.* (1989) 212
Cal.App.3d 1383 [allegation of an oral nondisclosure term in a
fifth complaint inconsistent with the allegations in four earlier

Exhibit 4
348

complaints that there was no express nondisclosure term]; *Cf. Avalon Painting v. Alert Lumber Co.* (1965) 234 Cal.App.2d 178 [amendment changing only conclusion of law regarding agency was not a sham].)

Accordingly, we find the trial court erred in finding the sham pleading doctrine was applicable to dismiss the TAC.

**D.**   ***The Court Did Not Err In Sustaining the Demurrer to Appellant's Claim for Breach of Article 6.***

It is basic hornbook law that the existence of a contract is a necessary element to an action based on a contract.  (*Roth v. Malson* (1998) 67 Cal.App.4th 552, 557.)  Although the TAC attaches Version 1 of the JVA as an exhibit, no allegation of the TAC commits to that version, or any version, as being the operative version of the parties' agreement.[3]  Appellants argue the attachment of Version 1 states the existence of a contract sufficient to survive demurrer, even if the attachment is inconsistent with the allegations of the complaint, because the law provides that an attached written instrument  controls in that instance.  (*Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955; *Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447.)  They also argue, in essence, the exhibit is simply representative of the language of Article 6, which is purportedly the same in all versions of the JVA.

---

[3]   It is still plead in paragraph 22(b) of the TAC that respondents created a new version of the JVA "to correct a mistake in 'Version 1' relating to Article 11," but there is no allegation that Version 2, the corrected version, is the operative one.  It is expressly alleged that Versions 3 and 4 did not become effective because "none was 'executed and delivered by all of the Members' of the Joint Venture, as required by Section 15.10 of the JVA."

Exhibit 4
349

Assuming the attached exhibit is sufficient to plead the existence of a contract and further that the allegations in that version and all other versions are the same with respect to Article 6, the TAC nonetheless fails to state a claim for breach of that contract because Article 6 is not reasonably susceptible to an interpretation that it confers an acquisition right.

The TAC "disclaims any reliance on Article 11" and its "buy/sell" rights in favor of reliance upon Article 6's profit distribution formula as the source of appellants' acquisition rights.  "Where a complaint is based on a written contract which it sets out in full, a general demurrer to the complaint admits not only the contents of the instrument but also any pleaded meaning to which the instrument is reasonably susceptible."  (*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239.)  The trial court found Article 6 is not reasonably susceptible to plaintiff's interpretation.  We agree.

Article 11 is entitled "Buy/Sell" and it provides that at any time after the five-year anniversary of the JVA, either member may give a Buy/Sell Offer Notice to the other member offering to buy the other member's interest.  In contrast, Article 6, entitled "Distributions" governs non-liquidating distributions of "Net Operating Cash Flow" and "Net Capital Proceeds" and establishes the "order and priority" in which joint venture profits are allocated between the Operating and Investor Members in Article 6.1.  Appellants contend that the language of Article 6 supports an interpretation that gives the Operating Member the right to "take-out" or "monetize" the Investor Member's interest in the joint venture.  However, as the trial court explained, appellants fail to point to any language in Article 6 that confers

17

Exhibit 4
350

any acquisition, monetization, buy-out, or "take-out" rights upon either member.

What Section 6.1 does provide is for distribution of profits in a series of steps described as a "waterfall" by the parties.[4] The final level, found in section 6.1(b)(vi), is reached once the Investor Member receives distributions amounting to both an IRR of 24 percent and 1.75 times the Investor Member's aggregate capital contributions. According to section 6.1(b)(vii), 100 percent of the profits are to be distributed to the Operating Member "if within five (5) years from the date" of the JVA the "Investor Member receives all amounts it is entitled to receive under Section 6.1(i) through (vi)."

Appellants find a "take-out" right in subsection (vii) that permits the Operating Member to acquire the Investor Member's entire interest in the joint venture any time within the first five years by tendering 1.75 times the Investor Member's capital contributions, a unilateral right in which the Investor Member

---

[4]    In general, the first distributions are made to the Investor Member until it has received an amount equal to its capital contributions and an "IRR" of 12 percent. Profits then spill over to the Operating Member until it has received an amount equal to its capital contributions and 12 percent interest. Then, the profits are distributed 80 percent to the Investor Member and 20 percent to the Operating Member until the Investor Member has received an IRR of 17 percent. Once that return is achieved, 65 percent goes to the Investor Member and 35 percent goes to the Operating Member until the Investor Member has received an IRR of 24 percent and 1.75 times is capital investment.

Exhibit 4
351

must acquiesce.[5]  However, nothing in Article 6 suggests that it creates a unilateral take-out, acquisition or monetization right in the Operating Member.  It only purports to govern the manner in which the joint venture must distribute net operating cash flow and capital proceeds to its members.  It does not refer to either member's ownership interest or provide that one member can force a sale by offering the other member the sum the joint venture itself would otherwise pay in profits.

 On the other hand, Article 11 expressly establishes the parties' buy-out rights; that is, it specifies the mechanism by which one member may buy or sell its interest in the Company and the time at which it can occur.  It does not mention or even suggest that there is another, alternate mechanism to buy out the other's interest anywhere within the agreement.

Appellants argue the trial court was required to accept that Article 6 means what appellants say it means.  Not so.  Courts are not bound to accept "conclusions of the pleader . . . contrary to the express terms of [an] instrument."  (*Alphonso E. Bell Corp. v. Bell View Oil Syndicate* (1941) 46 Cal.App.2d 684, 691.)

They offer extrinsic evidence to explain the essential contractual terms they contend "were understood by the parties

---

[5]    Appellants actually argue that "AEW's financial interest is eliminated, i.e., taken out, upon AEW's receipt of ***either*** an internal rate of return of 24% ***or*** 1.75 times AEW's investment within five years" (italics added), despite the language of section 6.1(b)(vi) stating the Operating Member is to receive 100 percent of the profits once the Investor Member has received "(i) an IRR of twenty-four percent (24%), ***and*** (ii) aggregate distributions under this Section 6 equal to the product of 1.75 and Investor Member's aggregate Capital Contributions."  (Emphasis added.)

Exhibit 4
352

but would otherwise be unintelligible to others." (*Sterling v. Taylor* (2007) 40 Cal.4th 757, 767.)  They offer Samek's May 19, 2010 email to Shekhter indicating that AEW agreed to a "minimum equity multiple of 1.75x" and that if AEW's investment is "monetize[d]" within five years "then NMS will keep all proceeds above AEW's 24% annual return."[6]  This email states nothing about acquiring the other party's interest, much less about acquiring it for 1.75 times its investment.  It simply describes how profits are distributed and interests are to be "monetized."  In fact, other extrinsic evidence not mentioned by appellants suggests appellants do not interpret Article 6 to include the right to acquire the other party's interest upon "monetization" that they now advocate here.  Shekhter's June 2013, letter to AEW attached as Exhibit D to the TAC, acknowledges that the JVA needs to be amended both "to provide for the withdrawal of the Investor Member from the Company once its economic interest becomes zero" and "to allow the Operating Member to use outside funds to get the Investor Member to an IRR of 24% and 1.75 multiple."  Accordingly, the trial court's finding that appellant's interpretation was not one to

---

[6]    Appellants quote the May 19, 2010 email from Samek to Shekhter which states "We've agreed to terms with NMS . . . [¶] 1) AEW minimum equity multiple of 1.75x and top hurdle in waterfall goes from 21% to 24%, compounded annually [¶] 2) If NMS monetizes all of AEW's Investment within 5 years then NMS will keep all proceeds above AEW's 24% annual return." This language suggests that even after AEW receives 1.75 times its capital investment it is still entitled to receive 24 percent interest annually, calling into question any interpretation that offering 1.75 times its investment was all that would be required to take out AEW's interest.

Exhibit 4
353

which the language of Article 6 was susceptible is not error. Because the contract is not susceptible to that interpretation, leave to amend was properly denied as to this cause of action.

**E.**    ***The Court Abused its Discretion In Denying Leave to Amend the Second Cause of Action.***

The demurrer to the second cause of action for breach of "other" provisions of the contract was sustained on multiple grounds, including that there was a failure to specify the section number of the agreement that was breached.  The court's discretion to deny leave to amend is abused where, as here, there is a reasonable possibility that the defect in the complaint can be cured by amendment.  (*City of Dinuba v. County of Tulare, supra,* 41 Cal.4th at p. 865.)  The TAC gives notice to respondents of what portion of the contract is being referenced in its allegation that "[t]he Joint Venture Agreement prohibits the Investor Member from taking any act in contravention of the Joint Venture Agreement."  This mirrors the language in Section 8.2(a) of the JVA ("Notwithstanding anything to the contrary in this Agreement, the Investor Member shall not cause the Company . . . to . . . [¶] (a) take any act, including, without limitation, making any distribution, in contravention of this Agreement.")  Even if greater specificity is required, it is readily apparent the TAC could be amended to state the section number.  Denying leave to amend on this ground is an abuse of discretion.

The trial court also determined that appellants failed to allege specific facts demonstrating that AEW breached Section 8.2(a).  For instance, the court cites a failure to articulate how the Investor Member wrongfully failed to give credit to the Operating Member for capital contributions it made and a failure to explain which defaults were "fabricated," and how that was done.

Exhibit 4
354

"[M]ere conclusions of law" that a defendant violated a contract do not state a claim for breach of contract "in the absence of allegations of fact showing such violations." (*Bentley v. Mountain* (1942) 51 Cal.App.2d 95, 98.) However, the facts underlying those allegations were stated earlier in the document in the factual background portion of the TAC. Paragraphs 21 and 23 plead in detail that Samek induced Shekhter to transfer various real estate projects to the joint venture for less than their fair market value and to contribute $1.5 million in cash without receiving the appropriate credit for these capital contributions. And fabricated defaults were explained in paragraph 27 to include falsely claiming (1) that the joint venture had been randomly selected for a year-end audit, then allowing the auditor to impose unreasonable document demands to be able to fabricate a claim that NMS would not cooperate and (2) that NMS had misappropriated funds so that NMS could be declared in default and removed as the Operating Member. The court abused its discretion in denying leave to amend this cause of action.

**F.    *The Trial Court Erred in Dismissing the Tort Claims.***

Respondents argue the court properly dismissed appellants' tort claims as "completely duplicative" of their breach of contract claims because both sets of claims turned on the purported contractual right to "take-out" the Investor Member. Delaware law, applicable by virtue of the choice of law provision in the JVA, provides that "'where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort.'" (*ITW Global Investments Inc. v. American Industrial Partners Capital Fund IV, L.P.* (Del.Super.Ct., June 24, 2015, No. N14C-10-236) 2015 WL

Exhibit 4
355

3970908, at *6, fn. omitted.)  They argue the trial court properly found that appellants' fraud claims arise from the contractual right of one member to take-out the other and must be treated as contract claims.

However, appellants more persuasively argue that their fraud claims allege pre-contractual tortious conduct which does not bootstrap a breach of contract claim into a fraud claim.  The TAC alleges that facts were misrepresented to fraudulently induce appellants to enter into the JVA which are separate and distinct from the breach of contract claim that AEW refused to honor provisions of the JVA.  The TAC alleges that during negotiations, AEW knowing made false representations about the joint venture program, including that there was a monetization right and that Shekhter's transfer of his properties to the joint venture at below fair market value would be "of no moment" because of his right to "take-out" AEW within a few years.  This is separate and distinct from allegations the contract was breached in several ways, including by falsely accusing the Operating Member of misappropriating funds or of fabricating defaults in the appellants' performance such that the Operating Member could be removed.

The trial court also found that NMS failed to allege how it could have reasonably relied on representations contrary to the terms of the integrated agreement.  The Supreme Court has held that a fraud claim based on fraudulent procurement of a contract is not barred by the presence of an integration clause. (*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1174-1176, 1182 (*Riverisland*).)  The trial court rejected appellants' reliance on *Riverisland*  because a showing of reasonable reliance "may be

Exhibit 4
356

impossible as a matter of law where, . . . a party has failed to
'acquaint [it]self with the contents of a written instrument.'"
However, the *Riverisland* court remarked that it was negligent
failure to acquaint oneself with the contents of a written
agreement that precluded finding a contract void for fraud in the
execution (*Riverisland, supra,* at p. 1183, fn. 11) and that is a
factual determination that cannot be made from the face of the
TAC.

　　The trial court did properly find, however, that the fraud
claims are not plead with sufficient specificity.  (See *Lazar v.
Superior Court* (1996) 12 Cal.4th 631, 645.)  Appellants failed to
identify each alleged misrepresentation, the names of the party
who made the misrepresentation, to whom they spoke or wrote
and their authority to speak on behalf of others, if applicable.
Boilerplate allegations are insufficient; fraud must be stated with
particularity.  (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991)
2 Cal.App.4th 153, 157.)  Since these matters are peculiarly
within appellants' knowledge, the denial of an opportunity to
amend was error.

　　The trial court improperly rejected the causes of action for
breach of fiduciary duty and constructive fraud because it found
that Section 8.17 of the JVA "expressly disavow[s] any fiduciary
relationship between the parties."  Section 8.17 provides only a
limited disclaimer of fiduciary duties.  It states that "with respect
to any approval or other right granted to the Members, the other
Member shall not have any fiduciary duty to any other Member
or the Company and may exercise such right or grant or refuse to
grant such approval under this Agreement for the sole benefit of
such Member, as determined in its sole discretion."  It also
disclaims a fiduciary duty with respect to any action taken by the

Exhibit 4
357

Company at the direction or with the consent of one of the Members.  In short, it is reasonable to interpret this provision to hold only that one member need not take the other member's interest into account when exercising a right under the Agreement, not that one party may violate terms of the agreement or engage in tortious conduct to the detriment of the other party.

The breach of fiduciary claim against Samek adequately alleges a relationship of trust and confidence that triggers a fiduciary duty.  (*Person v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1160.)  However, the TAC does not adequately identify the conduct appellants allege violated that duty and must be amended.

Last, we decline to hold that any error in the ruling on the demurrer is harmless because the complaint was subsequently dismissed as a discovery sanction.  The ruling on the terminating sanctions order and resulting judgment of dismissal is the subject of another pending appeal.

Exhibit 4
358

## DISPOSITION

We affirm the court's ruling sustaining demurrer as to all causes of action but find it was an abuse of discretion to deny an opportunity to amend as to all causes of action, except the first cause of action for breach of Article 6, as to which we affirm. The matter is remanded to the trial court. Respondents recover costs.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.*

MATZ

We concur:

_____, P. J.

LUI

_____, J.

CHAVEZ

---

\*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

26

Exhibit 4
359