JOHN M. GENGA (SB# 125522)
jgenga@gengalaw.com
GENGA & ASSOCIATES, P.C.
16000 Ventura Boulevard, Suite 1205
Encino, CA 91436
Telephone: (818) 444 4580
Facsimile: (818) 444 4585

Attorneys for Defendants
GENGA & ASSOCIATES, P.C.
and JOHN GENGA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| P6 LA MF Holdings SPE, LLC, a limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>NMS CAPITAL PARTNERS I, LLC; BRENTWOOD LEGAL SERVICES; STEVEN ZELIG; GENGA & ASSOCIATES, P.C.; WLA LEGAL SERVICES, INC.; JOHN GENGA; MILLER BARONDESS LLP; LOUIS R. MILLER; JAMES GOLDMAN; ALEXANDER FRID; JASON TOKORO; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:19-cv-01150-AB-AFM<br><br>SPECIAL MOTION TO STRIKE COMPLAINT PER CAL. CODE CIV. PROC. § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>*(Filed concurrently with Declaration of John M. Genga in support)*<br><br>DATE:   May 24, 2019<br>TIME:   10:00 a.m.<br>CTRM:  7B, First Street Courthouse<br>350 West First Street<br>Los Angeles, CA 90012 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

    PLEASE TAKE NOTICE that, on May 24, 2019, at 10:00 a.m. or as soon thereafter as the matter can be heard, in Courtroom 7B of the above-entitled Court, located at 350 West First Street, Los Angeles, California 90012, defendants Genga & Associates, P.C. and John Genga (collectively, the "Genga Defendants" or

"Gengas") will and do hereby move, pursuant to Cal. Code Civ. Proc. § 425.16, to strike the complaint filed against them and others on or about February 14, 2019 ("Complaint") by plaintiff P6 LA MF Holdings SPE, LLC ("Plaintiff" or "AEW") as a prohibited "strategic lawsuit against public participation" ("SLAPP").

Gengas so move on the grounds that the Complaint seeks to "chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances," and that AEW cannot "establish[ ] … a probability that the plaintiff will prevail on the claim" brought against Gengas in the Complaint. Gengas further reserve the right to join in any similar motion that other defendants herein may file.

Gengas base their motion on this notice of motion and motion itself, the following memorandum of points and authorities and accompanying declaration of John M. Genga in support hereof, the files and records of this action and such other evidence and argument as may be presented to the Court before or at the hearing on this matter.

DATED:  April 13, 2019          /s/  John Genga
                                John M. Genga
                                GENGA & ASSOCIATES, P.C.
                                Attorneys for Defendants
                                GENGA & ASSOCIATES, P.C.
                                and JOHN GENGA

GENGA DEFENDANTS' CAL. CODE CIV. PROC. § 425.16 SPECIAL MOTION TO STRIKE COMPLAINT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

AEW sues Gengas for engaging in the privileged conduct of briefly serving as one of several attorneys for clients in a case against AEW that began well before Gengas commenced their representation and which continued long after it ended. On its sole claim for malicious prosecution, AEW must prove that, with malice and no probable cause, Gengas filed and maintained an action which, as a matter of admitted fact, they neither filed nor maintained. As AEW cannot carry its burden to prove a likelihood of prevailing on its disfavored and abusive claim, the Court "shall" strike its Complaint as dictated by Cal. Code Civ. Proc. § 425.16.

## II. FACTS

AEW alleges that defendant NMS Capital Partners I, LLC ("NMS"), with the help of three separate law firms and six individual lawyers that AEW also sues (the "Counsel Defendants" and, together with NMS, "Defendants") "wrongfully initiated, and for more than three years continued to prosecute," a lawsuit against AEW – *Lincoln Studios, LLC,* et al. *v. DLA,* et al., Los Angeles Superior Court Case No. BC551551 (the "Lincoln Studios Case") – "that Defendants *knew* was based on a forgery and false allegations." Cmplt. 1:4-11 (emphasis added). The Lincoln Studios Action, brought by several NMS-related entities (included within the defined term "NMS" herein for ease of reference), began July 15, 2014 with a complaint filed by Counsel Defendants Zelig and WLA Legal Services, Inc. ("WLA"). *Id.* at 20:23; Genga Dec. ¶ 3, Ex. A at 172.[1]

Zelig and WLA amended the Lincoln Studios complaint on April 21, 2015. *Id.* Ex. A at 168. A month later, Gengas and Counsel Defendants Goldman and Miller Barondess LLP ("Miller Firm") associated into the case, with Zelig and WLA remaining lead counsel, for plaintiffs. *Id.* ¶ 4 and Ex. B.

---

[1] Zelig and/or WLA apparently also use the name Brentwood Legal Services, or at least AEW has sued a firm by that name as one of the Counsel Defendants herein.

At a discovery conference held in the Lincoln Studios Case on June 15, 2015 – less than a month after Gengas came in – AEW argued that NMS had forged the document on which its case depended. Counsel for AEW referenced a July 2010 email to which NMS "deal" counsel attached a mark-up of a draft joint venture agreement ("JVA") that NMS and AEW negotiated until ultimately signing it in September 2010. AEW counsel argued that the July 2010 email showed NMS wanted a 5-year "buy/sell" provision in the JVA, and not 3 years as NMS alleged got included in a later "Version 2" of the JVA (and upon which the NMS' claims in Lincoln Studios largely relied). This "proved," according to counsel for AEW, the "forgery" of Version 2. Cmplt. 12:1-13:26, 21:13-18.

The Genga Defendants then had no information beyond this. Genga Dec. ¶ 5. As AEW concedes, they and the other Counsel Defendants at the time said they would look further into the matter. Cmplt. 21:18-19.

Shortly thereafter, NMS located a September 14, 2010 letter by which AEW itself appeared to have delivered JVA Version 2 to NMS (the "Cover Letter"). Genga Dec. ¶ 6, Ex. C. Yet, AEW maintained its "forgery" stance,[2] and sought and obtained orders in September and October 2015 for NMS to preserve and then turn over for forensic examination all electronic devices and all originals and copies of JVA Version 2 and the Cover Letter. Cmplt. 24:3-9.

In or around October 2015, the remaining Counsel Defendants and others from the Miller Firm joined the NMS litigation team, and Miller himself took over as lead counsel. Gengas worked nearly around the clock with the other Counsel Defendants for approximately the next six weeks to produce the hundreds of thousands of documents and numerous electronic media that they had identified

---

[2] That different "versions" of the JVA existed matches AEW's own view of the document. AEW concedes amending the JVA by three "slip-sheet" agreements up to January 11, 2011, making for what AEW claimed as the operative JVA as of that date – a "Version 3" that NMS disputed – and ten "stand-alone" amendments later in 2011 and in 2012. Cmplt. at 16:15-19, 21:1-8.

-2-

from extensive interviews with all NMS personnel potentially possessing any such devices or responsive documents. Genga Dec. ¶ 7.

Gengas helped NMS complete all such production, upon which AEW would conduct its forensic examination, by about December 7, 2015. *Id.* ¶ 8. Gengas' engagement as one of several counsel to NMS terminated the next day, and NMS filed a formal notice of dissociation on December 26, 2015. *Id.* and Ex. D.

Only *after* Gengas ceased their representation – for reasons they of course cannot disclose due to attorney-client privilege – did NMS abandon their pleading based on JVA Version 2 and completely change their theory in a Third Amended Complaint ("TAC"). Cmplt. 26:9-27:18. Then only after *that* did AEW complete its forensic examination and move for terminating sanctions based on the opinions of document examination and electronic evidence experts that NMS not only had forged *both* JVA Version 2 *and* the Cover Letter by which AEW appeared to have delivered it to NMS, but also "had engaged in widespread destruction of evidence." *Id.* at 27:20-25.

At around that same (post-Gengas) time, AEW demurred to the TAC, which the court granted in June 2016 with a dismissal with prejudice. *Id.* at 28:11-.29:5. On July 29, 2016 – more than *seven months after* Gengas' dissociation as counsel for NMS – the court partially granted AEW's terminating sanctions motion, but left its determination of the extent of the sanction to an evidentiary hearing that took eight days in a 3-week period nearly three months after *that*. *Id.* at 29:6-36:2.

The court issued terminating sanctions on November 22, 2016, finding NMS had "fabricated evidence, submitted perjury about the same" and engaged in "intentional, widespread destruction of evidence" to an extent so "pervasive that violations of prior court orders are not even required … [to] … justify terminating sanctions." *Id.* at 36:3-18. It found NMS had "forged several pieces of evidence – at least [JVA] 'Version 2' … and the 'Cover Letter,'" which "itself constitutes a fraud on the court, the unlawful spoliation of evidence, and attempts to undermine

the judicial system." *Id.* at 37:5-8.  It also found "ample evidence that [NMS] – in particular Neil Shekhter – ha[d] provided false testimony under oath in order to mislead the Court and cover up their own misconduct." *Id.* at 37:10-12.

Based on such findings, the court entered judgment against NMS on all of its affirmative claims in the Lincoln Studios Case on December 1, 2016. *Id.* 41:5-6. It then took more evidence that day and the next and entered a default judgment for AEW on December 2 on its cross-complaint for a declaration of breach of the JVA by NMS. *Id.* at 41:7-44:6. By this time a year had gone by since Gengas had any involvement at all in the action. Genga Dec. ¶ 8.

NMS appealed from the order of terminating sanctions and the December 2016 judgments, but the Court of Appeal affirmed all on June 20, 2018. *Id.* at 44:9-45:15. It also affirmed the sustaining of AEW's demurrer to the TAC without leave to amend. *Id.* at 45:16-20. With all judgments final, *id.* at 46:21-25, AEW now brings this malicious prosecution action.

The Genga Defendants spent but a moment in time in the lengthy and highly involved Lincoln Studios Case. They appear in but a fraction of the 170-page docket and its 999 entries spanning more than four years. *See* Genga Dec. ¶ 3, Ex. A. They knew *none* of the actions NMS took to alter or destroy evidence. *Id.* ¶ 9. *All* of what AEW alleges NMS did – *e.g.*, Cmplt. ¶¶ 54-57, 65 – took place internally at NMS without Gengas' knowledge. Genga Dec. ¶ 9.

Rather, Gengas diligently searched for all material responsive to the court's production and turnover orders, investigated to identify all paper and electronic sources of such information, and believed they had produced all of it but had no way to know if NMS had hidden, altered or destroyed any of it as the court later found. *Id.* ¶ 7. Their representation ceased a day later, *id.* ¶ 8, well before they could learn what the court ultimately found. The attorney-client privilege makes it impossible to know whether they did or would have withdrawn so as not to have "maintained" the case if they found no probable cause to do so.

## III.   ARGUMENT

Finding "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of … petition for the redress of grievances," California's legislature has directed that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition … *shall* be subject to a special motion to strike, *unless* the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Code Civ. Proc. § 425.16(a), (b)(1) (emphases added). The two prongs of the statute require a moving defendant first to show *prima facie* that it took the acts of which plaintiff complains to further its rights of petition or free speech; if the court so finds, plaintiff then has the burden to prove a "probability" of prevailing on the claim with admissible evidence that, if accepted, would uphold a judgment in its favor. *Kashian v. Harriman*, 98 Cal. App. 4th 892, 906 (2002); *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 897-98 (E.D. Cal. 2006).

The remedial purpose of the statute "shall be construed broadly." Cal. Code Civ. Proc. § 425.16(a). Following this mandate, the Court cannot but strike the SLAPP brought irresponsibly by AEW against the Genga Defendants.

### A.   Representing NMS in Litigation Constitutes Protected Conduct.

Gengas easily satisfy the first part of the anti-SLAPP test. A claim that an attorney "maliciously and without probable cause brought and maintained" an action "is subject to anti-SLAPP scrutiny" by the statute's plain language. *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 734 (2003). An "'act in furtherance of a person's right of petition …' includes: (1) any written or oral statement … made before a … judicial proceeding, or … (2) … in connection with an issue under consideration or review by a … judicial body …." Cal. Code Civ. Proc. § 425.16(e). This definition necessarily encompasses "every malicious prosecution action, because every such action arises from an underlying lawsuit, or petition to the judicial branch." *Jarrow Formulas*, 31 Cal. 4th at 734-35. "*Accordingly, every*

*Court of Appeal that has addressed the question has concluded that malicious prosecution causes of action fall within the purview of the anti-SLAPP statute.*" *Id.* at 735 (emphasis added, multiple citations omitted).

The Supreme Court in *Jarrow Formulas* unambiguously establishes as law in California that an "action is not exempt from anti-SLAPP scrutiny merely because it is one for malicious prosecution." *Id.* at 741. An action for malicious prosecution challenges head-on a litigant's right to petition for redress of law and thus falls squarely within the protection of the first prong of the anti-SLAPP statute. Cal. Code Civ. Proc. § 425.16(b)(1), (e). A malicious prosecution plaintiff must establish a likelihood of prevailing on the merits in order avoid the striking of its complaint. *Jarrow Formulas*, 31 Cal. 4th at 741.

**B. AEW Cannot Prove Likely Success for Malicious Prosecution.**

Precisely because malicious prosecution may "impose an undue 'chilling effect' on the ordinary citizen's willingness … to bring a civil dispute to court, … the tort has traditionally been regarded as a disfavored cause of action." *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 872 (1989). To prevail on such a claim, AEW must prove that Gengas (1) *commenced* the Lincoln Studios Action or *pursued it to a legal termination in AEW's favor*, (2) without probable cause and (3) with malice. *Bertero v. National General Corp.*, 13 Cal.3d 43, 50 (1974). The plain facts, including as admitted by AEW, preclude AWE from establishing any likelihood of prevailing on the claim concocted against the Genga Defendants.

**1. Gengas neither *commenced* nor *maintained* the Lincoln Studios Action to a *termination* favorable to AEW.**

The Genga Defendants got into the Lincoln Studios Case nearly a year after it had begun. They represented NMS along with several other counsel for a period of a little more than seven months of an action that lasted over four years. By the time they disassociated from the case, it had not even gotten close to a termination favorable to AEW. These facts do not satisfy the malicious prosecution standard.

AEW concedes as much in its Complaint, contending that counsel for NMS should have withdrawn upon learning of the forgeries and other client activity the court found sanctionable. *See, e.g.*, Cmplt. 21:20. The Genga Defendants in fact did cease representing NMS right after turning over the information from which AEW would uncover the physical and electronic evidence of the NMS' forgeries and spoliation.

Exactly what should have happened, according to AEW, did. It falls short of the malicious prosecution standard that one maintain an action without probable cause to a favorable termination for the underlying defendant.

### 2. Gengas had facts giving them probable cause to maintain the Lincoln Studios Action to the point they did.

At the time Gengas disassociated from the Lincoln Studios Action, they had a JVA Version 2 that included a 3-year buy/sell provision and the September 2010 Cover Letter by which AEW appeared to deliver it to NMS. They knew that AEW *claimed* forgery as to the first based on certain limited, circumstantial evidence, but had no explanation for the Cover Letter. They also conducted the search for and production of the hard copy and electronic information that could lead to the truth.

Where there exists "no dispute concerning *the existence of the facts* relied upon to show probable cause, the trial court must then determine as a matter of law whether such undisputed facts do or do not warrant an inference of probable cause." *Sheldon Appel*, 47 Cal. 3d at 872, quoting *Franzen v. Shenk,* 192 Cal. 572, 578 (1923) (court's emphasis). No such dispute exists here. Gengas had enough facts giving them probable cause to continue as one of many counsel for NMS in the Lincoln Studios Case, at least until, if at all, those facts proved wrong. Having not reached that point, they cannot have malicious prosecution liability.

### 3. The Court cannot attribute NMS' conduct to Gengas.

No evidence shows that the Genga Defendants knew of the conduct in which the Lincoln Studios court found NMS to have engaged. While "for some purposes

-7-

an attorney is treated as the agent of his client so that his conduct is imputed to his client, the client is not the agent of his attorney.  Thus, if the client is guilty of misfeasance in failure to disclose all facts relevant to probable cause to his attorney or malfeasance in a false recitation, the dereliction is not imputable to counsel." *Zeavin v. Lee*, 136 Cal.App.3d 766, 772 (1982) (citations omitted).  Likewise the Court should not do that here, and should find the Genga Defendants not subject to AEW's overreaching malicious prosecution claim.

### IV.  CONCLUSION

The Court has a straightforward task as to which Gengas have made a clear showing satisfying the well-established elements entitling them to an order striking the Complaint against them.  For these reasons, and for others in motions of other Counsel Defendants in which Gengas may join, the Court should readily grant the relief sought.

DATED:  April 13, 2019             Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/  John Genga
　　　　　　　　　　　　　　　　　　　John M. Genga
　　　　　　　　　　　　　　　　　　　GENGA & ASSOCIATES, P.C.
　　　　　　　　　　　　　　　　　　　Attorneys for Defendants
　　　　　　　　　　　　　　　　　　　GENGA & ASSOCIATES, P.C.
　　　　　　　　　　　　　　　　　　　and JOHN GENGA