Stephen J. Tully, SBN 112390
stully@garrett-tully.com
Robert Garrett, SBN 65886
rgarrett@garrett-tully.com
Efren A. Compeán, SBN 119658
ecompean@garrett-tully.com
GARRETT & TULLY, P.C.
225 S. Lake Ave., Suite 1400
Pasadena, California 91101-4869
Telephone: (626) 577-9500
Facsimile: (626) 577-0813

Attorneys for Miller Barondess, LLP,
Louis R. Miller, James Goldman,
Alexander Frid, and Jason Tokoro

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| P6 LA MF Holdings SPE, LLC, a limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>NMS CAPITAL PARTNERS I, LLC; BRENTWOOD LEGAL SERVICES; STEVEN ZELIG; GENGA & ASSOCIATES, P.C.; WLA LEGAL SERVICES, INC.; JOHN GENGA; MILLER BARONDESS LLP; LOUIS R. MILLER; JAMES GOLDMAN; ALEXANDER FRID; JASON TOKORO; AND DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:19-cv-1150-AB-AFMx<br><br>(Hon. Andrè Birotte, Jr.)<br><br>**NOTICE OF SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:        May 24, 2019<br>TIME:        10:00 a.m.<br>CRTRM:     7B |

**GARRETT & TULLY**
A PROFESSIONAL CORPORATION

Case No. 2:19-cv-01150-AB-AFMx

NOTICE OF SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

334629.DOCX

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 24, 2019 at 10:00 a.m. or as soon thereafter as the matter may be heard before the Honorable André Birotte, Jr. in Courtroom 7B, located at 350 W. First Street, Los Angeles, California 90012, Defendants Miller Barondess, LLP, Louis R. Miller, James Goldman, Alexander Frid, and Jason H. Tokoro (the "Miller Firm") will, and hereby do, move the Court, pursuant to California Code of Civil Procedure § 425.16, for an order striking the Complaint filed by Plaintiff P6 LA MF Holdings SPE, LLC on February 14, 2019 against the Miller Firm.

Section 425.16 – known as the "anti-SLAPP" statute – is a means to quickly dispose of causes of action arising from a defendant's exercise of his or her constitutional right to petition for redress of grievances. The anti-SLAPP statute can be used against state law claims asserted in federal court. *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005) (per curiam). The anti-SLAPP analysis is a two-prong inquiry: (1) the defendant(s) must show that the claims arise from protected activity; and (2) the burden then shifts to the plaintiff(s) to produce admissible evidence to demonstrate a probability of prevailing on the merits of the claims. *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016). "An anti-SLAPP motion is available to defendants in federal court." *Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2014).

The Complaint alleges a single cause of action against the Miller Firm for malicious prosecution. It is well-established that a claims for malicious prosecution arises from protected petitioning activity. *See* Cal. Civ. Proc. Code §§ 425.16(e)(1) & (2).

Because the Complaint arises from protected activity, the burden shifts to AEW to demonstrate a probability of prevailing on the merits. AEW cannot do so. There is no evidence that the Miller Firm brought the underlying action without probable cause or with malice – two requirements necessary to support a malicious

Case No. 2:19-cv-011150-AB-AFMx

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

1    prosecution claim.

2        Pursuant to Section 425.16(c)(1), the Miller Firm is entitled to and requests

3    their attorneys' fees and costs incurred in prosecuting this Motion.[1]

4        This Motion is made following the conference of counsel pursuant to Local

5    Rule 7-3, which took place on April 10, 2019.

6        This Motion is based upon this Notice, the attached Memorandum of Points

7    and Authorities, the declarations of Louis R. Miller, James Goldman, A. Sasha Frid

8    and Jason Tokoro and exhibits thereto, the concurrently filed Request for Judicial

9    Notice, the concurrently filed Appendix of Exhibits, all pleadings and papers on file

10   in this action, and such other matter and evidence as may be presented at or before

11   the hearing on this Motion.

12   DATED: April 18, 2019          GARRETT & TULLY, P.C.

13

14

15

16                                  STEPHEN J. TULLY
                                    Attorneys for Defendants Miller Barondess,
17                                  LLP, Louis R. Miller, James Goldman,
                                    Alexander Frid, and Jason Tokoro
18

19

20

21

22

23

24

25

26   [1] Section 425.16(c)(1) mandates that the prevailing defendant on a SLAPP motion
     "shall" recover that party's attorneys' fees and costs. If the Court grants this Motion,
27   the Miller Firm will file a separate fee motion. *See Ketchum v. Moses*,
     24 Cal. 4th 1122, 1131-32 (2001).
28

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

## **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................9

I.    INTRODUCTION ............................................................................9

II.   FACTS ..........................................................................................13

III.  LEGAL STANDARD ON ANTI-SLAPP MOTIONS ..................................17

IV.   AEW'S CLAIMS ARE PROTECTED ACTIVITY (FIRST PRONG) ..........18

V.    AEW CANNOT ESTABLISH A PROBABILITY OF PREVAILING (SECOND PRONG) ........................................................................19

    A.    Plaintiff Cannot Establish That The Miller Firm Lacked Probable Cause to Prosecute The *Lincoln* Action .............................................19

        1.    There Was Probable Cause for the Allegations in the TAC .......21

            (a)    Evidence Supported the Article 6 Claim in the TAC .......21

            (b)    AEW's Conduct Confirms That the Miller Firm Had Probable Cause to Pursue the *Lincoln* Action .................23

            (c)    Third-Party Witnesses Confirmed the Take-Out Right.........24

            (d)    Another Court Confirmed That NMS's Article 6 Claim Had Merit .................25

        2.    The Miller Firm Had Probable Cause to Defend NMS With Respect to Discovery Misconduct Allegations .................26

            (a)    NMS's Experts Disproved AEW's Allegations ..............26

            (b)    The Miller Firm Was Blocked from Getting Discovery .................28

            (c)    Sanctions Were Denied by Judge Johnson .......................29

    B.    AEW's Claim Against The Miller Firm Is Barred By The Interim Adverse Judgment Rule.........................................................30

    C.    AEW Cannot Establish The Miller Firm Acted With Malice..............32

VI.   CONCLUSION.................................................................................33

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

# TABLE OF AUTHORITIES

**Page**

## CASES

*Antounian v. Louis Vuitton Malletier,*
189 Cal. App. 4th 438 (2010) ................................................................ 30

*Baral v. Schnitt,*
1 Cal. 5th 376 (2016) ............................................................................ 2

*Bealmear v. S. Cal. Edison Co.,*
22 Cal. 2d 337 (1943) ........................................................................... 30

*Bertero v. Nat'l Gen. Corp.,*
13 Cal. 3d 43 (1974) ....................................................................... 19, 27

*Bixler v. Goulding,*
45 Cal. App. 4th 1179 (1996) ............................................................... 26

*Carpenter v. Sibley,*
153 Cal. 215 (1908) .............................................................................. 30

*Chavez v. Mendoza,*
94 Cal. App. 4th 1083 (2001) ............................................................... 18

*Cowles v. Carter,*
115 Cal. App. 3d 350 (1981) .......................................................... 29, 30

*Crescent City Live-Stock Landing & Slaughter-House Co. v. Butchers' Union
Slaughter-House & Live-Stock Landing Co.,*
120 U.S. 141 (1887) .............................................................................. 30

*Daniels v. Robbins,*
182 Cal. App. 4th 204 (2010) ............................................................... 32

*Daubert* v. *Merrell Dow Pharm., Inc.,*
509 U.S. 579 (1993) .............................................................................. 26

*Downey Venture v. LMI Ins. Co.,*
66 Cal. App. 4th 478 (1998) ................................................................. 32

*DuPont Merck Pharm. Co. v. Superior Court,*
78 Cal. App. 4th 562 (2000) ................................................................. 19

*Fairchild v. Adams,*
170 Cal. App. 2d 10 (1959) .................................................................. 30

*Fleishman v. Superior Court,*
102 Cal. App. 4th 350 (2002) ............................................................... 26

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

*Fox Searchlight Pictures, Inc. v. Paladino,*
    89 Cal. App. 4th 294 (2001) ................................................................. 18

*Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP,*
    184 Cal. App. 4th 313 (2010) ............................................................... 20

*Fremont Indem. Co. v. Fremont Gen. Corp.,*
    148 Cal. App. 4th 97 (2007) ................................................................. 22

*Graham-Sult v. Clainos,*
    756 F.3d 724 (9th Cir. 2014) ................................................................... 2

*Grindle v. Lorbeer,*
    196 Cal. App. 3d 1461 (1987) .............................................................. 20

*Heidlebaugh v. Miller,*
    126 Cal. App. 2d 35 (1954) ................................................................... 22

*Holliday v. Holliday,*
    123 Cal. 26 (1898) ................................................................................ 30

*Jarrow Formulas, Inc. v. LaMarche,*
    31 Cal. 4th 728 (2003) .......................................................................... 18

*Jenkins v. Pope,*
    217 Cal. App. 3d 1292 (1990) .............................................................. 12

*Ketchum v. Moses,* 24 Cal. 4th 1122 (2001) ............................................. 3

*Kleveland v. Siegel & Wolensky, LLP,*
    215 Cal. App. 4th 534 (2013) ......................................................... 18, 32

*Larson v. UHS of Rancho Springs, Inc.,*
    230 Cal. App. 4th 344 (2014) .............................................................. 17

*Marijanovic v. Gray, York & Duffy,*
    137 Cal. App. 4th 1262 (2006) ............................................................ 20

*McNeil v. Graner,*
    91 Cal. App. 2d 858 (1949) ................................................................. 22

*New Albertsons, Inc. v. Superior Court,*
    168 Cal. App. 4th 1403 (2008) ............................................................ 26

*Paiva v. Nichols,*
    168 Cal. App. 4th 1007 (2008) ............................................................ 26

*Panos v. Great W. Packing Co.,*
    21 Cal. 2d 636 (1943) .......................................................................... 32

*Pattiz v. Minye,*
    61 Cal. App. 4th 822 (1998) ................................................................ 10

*Paul for Council v. Hanyecz,*
    85 Cal. App. 4th 1356 (2001) .............................................................. 19

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

NOTICE OF MOTION FOR SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

*People v. Mitcham,*
   1 Cal. 4th 1027 (1992) ............................................................... 27

*Plumley v. Mockett,*
   164 Cal. App. 4th 1031 (2008) ............................................... 19, 30

*Pond v. Ins. Co. of N. Am.,*
   151 Cal. App. 3d 280 (1984) ..................................................... 29

*Ricard v. Grobstein, Goldman, Stevenson, Siegel, LeVine & Mangel,*
   6 Cal. App. 4th 157 (1992) ........................................................ 32

*Roberts v. L.A. Cty. Bar Ass'n,*
   105 Cal. App. 4th 604 (2003) ..................................................... 18

*Roberts v. Sentry Life Ins.,*
   76 Cal. App. 4th 375 (1999) ....................................................... 29

*S. Pac. Transp. Co. v. Santa Fe Pac. Pipelines, Inc.,*
   74 Cal. App. 4th 1232 (1999) ..................................................... 24

*Salma v. Capon,*
   161 Cal. App. 4th 1275 (2008) ................................................... 18

*Samara v. Matar,*
   5 Cal. 5th 322 (2018) ................................................................. 12

*Sangster v. Paetkau,*
   68 Cal. App. 4th 151 (1998) ....................................................... 20

*Sheldon Appel Co. v. Albert & Oliker,*
   47 Cal. 3d 863 (1989) ..................................................... 11, 19, 20

*Thomas v. Fry's Elecs., Inc.,*
   400 F.3d 1206 (9th Cir. 2005) ................................................ 2, 18

*Tool Research & Eng'g Corp. v. Henigson,*
   46 Cal. App. 3d 675 (1975) ........................................................ 20

*Uzyel v. Kadisha,*
   188 Cal. App. 4th 866 (2010) ..................................................... 20

*Varian Med. Sys., Inc. v. Delfino,*
   35 Cal. 4th 180 (2005) ............................................................... 19

*Williamson v. Superior Court,*
   21 Cal. 3d 829 (1978) ................................................................. 29

*Wilson v. Parker, Covert & Chidester,*
   28 Cal. 4th 811 (2002) ......................................................... 20, 30

*Zeavin v. Lee,*
   136 Cal. App. 3d 766 (1982) ...................................................... 21

GARRETT & TULLY
A PROFESSIONAL CORPORATION

Case No. 2:19-cv-01150-AB-AFMx

NOTICE OF MOTION FOR SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

334629.DOCX

**STATUTES**

Cal. Civ. Proc. Code § 425.16.................................................................. 18, 33

Cal. Civ. Proc. Code § 425.16(b)(1) ........................................................ 17, 18

Cal. Civ. Proc. Code § 425.16(b)(2) ............................................................. 18

Cal. Civ. Proc. Code § 425.16(c)(1) ............................................................ 3, 18

Cal. Civ. Proc. Code §§ 425.16(e)(1) & (2)...................................................... 2

**RULES**

Model Code of Prof'l Responsibility DR 7-102(A)(4), EC 7-6 (Am. Bar Ass'n 1980)............................................................................................ 20

Model Rules of Prof'l Conduct r. 3.4(b) (Am. Bar Ass'n 2018)............................. 20

**TREATISES**

Thomas R. Burke, Anti-SLAPP Litigation § 2:110 (Sept. 2018 Update) ................ 18

**GARRETT & TULLY**
A PROFESSIONAL CORPORATION

NOTICE OF MOTION FOR SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

334629.DOCX

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This lawsuit is a strategic maneuver to gain leverage in a long-standing real estate dispute by driving a wedge between a client and its lawyers. AEW is suing the Miller Firm for doing its job and for its legal work in representing a client in a hotly contested state court lawsuit. Because AEW's sole claim against the Miller Firm for malicious prosecution arises from protected activity, California's Anti-SLAPP statute requires dismissal of this lawsuit unless AEW can prove it is likely to prevail on the merits. AEW cannot. There is no *evidence* that the Miller Firm brought the underlying action without probable cause or with malice – two requirements necessary to support a malicious prosecution claim.

Here are the facts: AEW, an East Coast hedge fund, and NMS Capital Partners I, LLC ("NMS"), a Santa Monica-based real estate developer, are locked in a major business dispute over the parties' joint venture ("JV") involving nine mixed-use apartment buildings in West Los Angeles (the "Properties").

In 2010, NMS needed an equity investor to develop the Properties and, to that end, entered into a JV with AEW. The key inducement for NMS and its principal, Neil Shekhter, was the right to take out, or monetize, AEW's interest in the JV within 5 years by paying AEW the greater of: (1) 1.75 times its invested capital, or (2) a 24% annual return (the "Monetization Formula"). After the parties signed the JV agreement ("JVA"), AEW became the "investor member" and invested $60 million. NMS became the "operating member," transferred its Properties to the JV, and also contributed millions of dollars.

From 2010 until 2013, everything went smoothly. In June 2013, after NMS had completed or substantially completed development of the Properties, NMS sought to repay AEW's investment, tendering $106 million: $60 million [AEW's investment] x 24% per annum x 3 years, based on Article 6.1 of the JVA. But by 2013, the Properties had appreciated in value by a lot more than 24% per annum.

NOTICE OF MOTION FOR SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

1  For that reason, AEW refused to allow NMS to take out, or monetize, AEW's

2  interest in the JV.

3       In July 2014, NMS and other related entities filed a lawsuit in Los Angeles

4  Superior Court captioned *Lincoln Studios, LLC, et al. v. DLA, et al.*, Case No.

5  BC 551551 (Hon. Suzanne Bruguera) (the "*Lincoln* Action"). In April 2015, NMS

6  added AEW as a defendant in the lawsuit. NMS's lead attorney was Steven Zelig

7  and his law firm. Skip Miller and the Miller Firm stepped in as NMS's lead counsel

8  in November 2015. Miller and the firm took immediate action, including filing a

9  Third Amended Complaint ("TAC") that streamlined the case and attached extrinsic

10  evidence confirming NMS's take-out right.

11       In January 2016, AEW filed a motion for sanctions claiming that NMS's

12  principal, Shekhter, engaged in forgery and spoliation regarding a provision of the

13  JVA – a mutual Buy/Sell right contained in Article 11 – *not* the take-out provision

14  in Article 6.1 under which NMS sought to take out AEW's interest in the JV. The

15  sanctions motion was granted, and a default judgment was entered on Plaintiffs'

16  complaint and a cross-complaint that AEW had filed against NMS. On appeal, the

17  judgment was affirmed as to NMS, but reversed as to all other plaintiffs.

18       In this lawsuit, AEW is repackaging the state court litigation into a malicious

19  prosecution claim. Because there is no evidence that the Miller Firm did anything

20  wrong, AEW attempts to impute the alleged forgery, spoliation and misconduct on

21  the part of NMS to NMS's counsel, including the Miller Firm and its lawyers. This

22  is contrary to California law, and it cannot be a basis for a malicious prosecution

23  action. *Pattiz v. Minye*, 61 Cal. App. 4th 822, 828 (1998) ("The malfeasance or

24  dereliction of a client is not imputed to his or her attorney.").

25       Indeed, AEW presented the same claims of forgery and spoliation to two Los

26  Angeles Superior Court judges and asked that the Miller Firm be sanctioned –

27  essentially the same thing they are trying to do in this lawsuit. Both judges, Hon.

28  Susanne Bruguera and Hon. Michael Johnson, refused. In fact, the *Lincoln* court

GARRETT & TULLY
A PROFESSIONAL CORPORATION

10

Case No. 2:19-cv-01150-AB-AFMx

NOTICE OF MOTION FOR SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

334629.DOCX

1  signed a 94-page proposed order that AEW prepared almost verbatim but deleted all

2  of the provisions that would have imposed sanctions and made adverse findings

3  against the lawyers. AEW now wants a do-over of those decisions.

4       Malicious prosecution claims against attorneys are disfavored because they

5  create a chilling effect on legal representation. In order to show that the Miller Firm

6  acted without probable cause, AEW must prove that "any reasonable attorney"

7  would agree that all of NMS's claims were "totally and completely without merit."

8  *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 885 (1989) (citation omitted).

9  AEW cannot come close to meeting this burden.

10      The gravamen of this lawsuit is that the Miller Firm lacked probable cause to

11  pursue the claim that NMS had a take-out right under the JVA, and that the TAC

12  was a "sham." AEW is wrong. The take-out right is supported by substantial

13  evidence that the Miller Firm considered before moving forward with the *Lincoln*

14  Action: (i) the "waterfall" provision in Article 6.1 which provides that AEW's

15  interest goes to zero once AEW's investment is repaid; (ii) the documents reflecting

16  the pre-JVA negotiations, which confirm that AEW promised NMS that it would

17  have the right to take out or buy out AEW's interest in the JV; (iii) an email (the

18  congratulatory "Mazel Tov" email), a term sheet, and an internal AEW memo

19  confirming the take-out right; (iv) Shekhter's contribution of four Properties that he

20  owned into the JV for below market value, which would have made no sense unless

21  NMS had a take-out right; (v) sworn third-party witness testimony confirming that

22  AEW had promised Shekhter the take-out right; and (vi) 2013 and 2015 negotiations

23  in which AEW made offers for NMS/Shekhter to buy it out and get the Properties.

24  (*See infra* Section V.A.1.)

25      After looking at just some of this evidence, Judge Michael Johnson in another

26  action between the same parties – *P6 LA MF Holdings I, LLC v. NMS Properties,*

27  *Inc.*, LASC Case No. BC584878 (the "*P6* Action") – held that the "evidence is

28  sharply divided" and that NMS "raised legitimate issues" about the exercise of the

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

1  take-out right in Article 6.1. Furthermore, the Court of Appeal in the *Lincoln* Action

2  specifically held that the TAC was *not* a "sham pleading." Those findings confirm

3  that the Miller Firm had probable cause to pursue the case, and that there was no

4  malice.

5      AEW also harps on the fact that the TAC the Miller Firm filed in the *Lincoln*

6  Action substantially reduced and streamlined the allegations and causes of action

7  pleaded in NMS's earlier complaints. (Compl., ¶¶ 1, 29, 132.) The law not only

8  encourages lawyers to drop questionable claims, but outright precludes a claim of

9  malicious prosecution for doing so. *Jenkins v. Pope*, 217 Cal. App. 3d 1292, 1301

10  (1990) ("To allow a malicious prosecution suit to be based on a cause of action

11  dropped from an amended complaint would discourage amendment of pleadings to

12  delete theories which come to appear untenable.").

13      With respect to the forgery and spoliation, the expert testimony was in

14  conflict. NMS's four experts opined that the findings of AEW's experts were

15  incorrect and unsupported by the evidence. Significantly, because the evidence was

16  so much in dispute, the Court of Appeal declined to address and affirm the *Lincoln*

17  court's ruling that NMS engaged in forgery. The Court of Appeal's decision to leave

18  AEW's forgery claim unresolved renders the forgery issue an open question without

19  preclusive effect. *Samara v. Matar*, 5 Cal. 5th 322, 333 (2018). Therefore, on this

20  additional ground, AEW cannot support a claim that the Miller Firm lacked

21  probable cause, let alone acted with malice.

22      Moreover, AEW's contention that the Miller Firm made no effort to

23  investigate the facts is false. As AEW knows, the Miller Firm diligently and

24  repeatedly sought discovery, including a forensic examination of AEW's data and

25  percipient and expert depositions, to gather further evidentiary support that there

26  was no forgery or spoliation. But AEW blocked and obstructed that discovery at

27  every step, and went so far as to admit to a third-party witness whom the Miller

28  Firm subpoenaed that AEW's "*goal [was] to keep everyone from being deposed.*"

GARRETT & TULLY
A PROFESSIONAL CORPORATION

1  The Miller Firm was blocked from taking a single deposition, and AEW refused to

2  produce a single document to the Miller Firm.

3       Finally, AEW's contention that the Miller Firm should have resigned and

4  abandoned its client goes against the foundation of a lawyer's ethical duties. Good

5  lawyers do not run for the hills when they are faced with adversity in a lawsuit or

6  when hedge fund lawyers with unlimited resources accuse their client of

7  wrongdoing.

8       Rather than allege any facts that the Miller Firm knew of, or participated in,

9  NMS's misconduct, AEW merely hypothesizes that the "only explanation" for the

10  Miller Firm's defense of NMS against AEW's claims that NMS forged and

11  destroyed evidence is that it must have been "actively involved" in NMS's

12  misconduct. This self-serving accusation comes nowhere near to meeting AEW's

13  burden to prove lack of probable cause or malice, and is on its face improper.

14       The Miller Firm did their job as competent and ethical lawyers. There is not a

15  shred of evidence that they acted without probable cause or with any malice. AEW's

16  claims are designed to stop a respected Los Angeles firm from representing its

17  client. AEW wants the Miller Firm to throw its client under the bus and abandon it.

18  That's not going to happen. This is exactly the type of lawsuits that Anti-SLAPP

19  was designed to prevent. The Motion should be granted.

20  **II.  FACTS**

21       In 2010, NMS entered into a JVA with AEW, whereby NMS contributed cash

22  and real property for further development by the JV, and AEW contributed capital.

23  (Ex. "B" to TAC (Ex. 2).) In 2013, NMS communicated its intent to buy out AEW's

24  interest under Article 6.1 of the JVA. (Ex. 6.)

25       AEW has asserted that, later in 2013, it received a version of the JVA –

26  "Version 2" – in which NMS's principal, Shekhter, had unilaterally altered a

27  separate provision of the JVA – the Buy/Sell right contained in Section 11 of the

28  JVA – by changing the provision's trigger from five to three years. (Ex. 26.)

GARRETT & TULLY
A PROFESSIONAL CORPORATION

NOTICE OF MOTION FOR SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

334629.DOCX

1    However, in March 2015, AEW proposed that NMS buy out its interest in the

2    JV for an amount calculated under Article 6.1 of the JVA. (Ex. 12.)

3    In July 2014, NMS and its affiliated parties filed the *Lincoln* Action. In early

4    2015, NMS filed a first amended complaint that named AEW as a defendant.

5    (Declaration of Louis R. Miller ("Miller Dec.") ¶ 9.) The Miller Firm did not

6    represent NMS at that time. (*Id.* ¶ 9.)

7    In August 2015, AEW filed a motion for a forensic examination of NMS's

8    data contending, among other things, that Version 2 of the JVA, a 2010 "cover

9    letter" accompanying it, and a "botched" property management agreement ("PMA")

10    were forgeries; and in October 2015, the *Lincoln* court issued orders for that forensic

11    examination. (Ex. 36.)

12    In November 2015, the Miller Firm took over as lead counsel for NMS. The

13    Miller Firm immediately got to work reviewing the pleadings, depositions,

14    documents, and evidence, and spoke with witnesses about the events at issue.

15    (Miller Decl. ¶ 18.) Thereafter, the Miller Firm filed the TAC on January 13, 2016.

16    (Miller Decl. ¶ 21; (Ex. 2).) The TAC reduced the allegations which NMS had

17    asserted in the earlier pleadings, and streamlined the causes of action NMS alleged

18    to just six. (*Id.*) The TAC alleged that Article 6.1 of the JVA (which had been

19    invoked by NMS in 2013 and in AEW's buy-out proposal in 2015) gave NMS the

20    right to take out AEW once AEW achieved, from NMS or from distributions from

21    the JV, a certain return on its investment in the JV. (TAC (Ex. 2) ¶¶ 8-10, 13, 22,

22    25-26.)

23    In January 2016, AEW demurred to the TAC. (Ex. 25.) In June 2016, the trial

24    court sustained AEW's demurrer without leave to amend, and also held that NMS's

25    complaint was a "sham" pleading." (*Id.*, pp. 5-7) As discussed below, that ruling

26    was overturned on appeal.

27    Also, in January 2016, AEW filed a motion in the *Lincoln* Action for

28    sanctions against NMS and the Miller Firm, alleging forgeries, spoliation of

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

NOTICE OF MOTION FOR SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL
PROCEDURE SECTION 425.16

1  evidence and perjury by NMS. (Ex. 26.) The Miller Firm opposed the motion by

2  submitting affirmative evidence that no one at the firm had any knowledge or

3  involvement in the misconduct alleged by AEW. (Ex. 42 hereto.) The Miller Firm

4  also advised the court that when it was retained, counsel for AEW threatened Mr.

5  Miller and warned him to not take the case or else. (Ex. 42, (Ex. 1 thereto, ¶ 6).)

6      AEW filed another action seeking to remove NMS as manager of the

7  properties it had contributed to the joint venture, entitled *P6 LA MF Holdings I, LLC*

8  *v. NMS Properties, Inc..* LASC Case No. BC584878 (Hon. Michael Johnson) (the

9  "*P6* Action"). In May 2016, AEW moved for a preliminary injunction. Later, in

10 June 2016, AEW filed another motion for sanctions against NMS and the Miller

11 Firm, which represented NMS in the *P6* Action. In both motions, AEW relied on

12 and alleged the same claims of forgeries, spoliation of evidence and perjury against

13 NMS that AEW had alleged in the *Lincoln* Action. (Exs. 21, 38.)

14     In June 2016, Judge Johnson denied AEW's motion for an injunction in the

15 *P6* Action, holding that the evidence of NMS's alleged forgery and other

16 misconduct was "sharply divided," that the Miller Firm had raised "legitimate

17 issues" concerning NMS's right to buy out AEW under Article 6, and therefore

18 AEW had "not established a reasonable probability of success" on that claim and its

19 claim of NMS's forgeries. (Ex. 38.)

20     On July 5, 2016, Judge Johnson issued an order denying AEW's motion for

21 sanctions against NMS and the Miller Firm, holding that sufficient disputed

22 evidence existed to require that AEW's claims of forgery and other misconduct by

23 NMS be submitted to "the trier of fact" for adjudication. (Ex. 21.) Among the

24 evidence the Miller Firm introduced on behalf of NMS were the declarations of four

25 experts, each of whom disputed and disagreed with AEW's claims of forgery and

26 spoliation. (Exs. 16-19, 41.) AEW never moved for reconsideration or appealed any

27 of the orders of Judge Johnson against AEW. (Miller Decl. ¶ 29.)

28     In the meantime, the Miller Firm sought both percipient and expert discovery

GARRETT & TULLY
A PROFESSIONAL CORPORATION

and depositions, and a forensic examination of AEW's data in the *Lincoln* Action, in order to defend AEW's motion for sanctions, and to further support NMS's claims. (Ex. 13.) AEW managed to block all of that discovery: AEW's former employee Daniel Lennon testified that when the Miller Firm subpoenaed him for deposition, AEW's counsel sought his agreement to represent him, and told him that AEW's "goal" was to prevent all depositions the Miller Firm sought to take. (Ex. 14.) The Miller Firm was blocked from taking a single deposition, or securing a single document from AEW in the *Lincoln* Action. (Frid Decl., ¶ 12.) The *Lincoln* court refused to allow the Miller Firm and NMS to take the depositions of the experts AEW relied upon to support its claims of forgery and spoliation, and the court never ruled on NMS's motion for a forensic examination of AEW's data. (Ex. 33.)

Ultimately, in contrast to the orders of Judge Johnson in the *P6* Action, the court in the *Lincoln* Action granted AEW's motion for sanctions against NMS on July 29, 2016, but ordered an evidentiary hearing be held to determine the nature of the sanctions. (*Id.*)

That evidentiary hearing was conducted over eight days in October 2016. (*See* Exs. 15, 28.) As in any evidentiary hearing or trial, the Miller Firm made decisions concerning which witnesses to call and what evidence to introduce concerning the claims of forgery, spoliation and perjury AEW relied upon to seek sanctions. (*Id.*)

In its closing argument, AEW aggressively argued that the Miller Firm be sanctioned for its supposed knowledge of, and participation in, NMS's misconduct. (Ex. 28.) In its post-hearing briefing and proposed order, AEW made the same argument and submitted a draft order that included findings that sanctions should be imposed on the Miller Firm based on the same supposed knowledge and participation. (Exs. 27, 29-31.)

On November 22, 2016, the trial court signed AEW's proposed order nearly verbatim. (Ex. 33. ) Importantly, however, the trial court rejected AEW's claims against the Miller Firm, and struck from the order any findings or sanctions against

**GARRETT & TULLY**
A PROFESSIONAL CORPORATION

1  the Miller Firm. (*Id.*) AEW never moved for reconsideration, nor did it appeal the

2  trial court's denial of AEW's request for sanctions against the Miller Firm. (Miller

3  Decl. ¶ 29.) In December 2016, the trial court held a "prove-up" hearing, refusing to

4  let NMS or its lawyers participate, and entered judgment against NMS on its

5  complaint against AEW and on AEW's cross-complaint. (Ex. 1).) NMS timely

6  appealed the judgment. (Ex. 3.)

7        NMS appealed from both the order granting sanctions and the judgments.

8  (*Id.*) The Court of Appeal reversed the dismissal of the TAC, holding that it

9  "adequately allege[d] causes of action for breach of contract, fraud and breach of

10  fiduciary duty." (Ex. 4, pp. 2, 12-16.) The Court only affirmed the dismissal of NMS

11  Capital's First Cause of Action for breach of contract (concerning Section 6 of the

12  JVA). (*Id.*, p. 2.) It reversed with respect to all other claims and specifically held

13  that the TAC was not a "sham pleading."[2] (*Id.*)

14        With respect to sanctions, the Court of Appeal affirmed a portion of the trial

15  court's award of terminating sanctions against *only* NMS. (Ex. 22, p. 17.) None of

16  the other *Lincoln* plaintiffs were terminated, and the matter was sent back to the trial

17  court for further proceedings on plaintiffs' claims. (Ex. 22, p. 26.)

18  ## III.   LEGAL STANDARD ON ANTI-SLAPP MOTIONS

19        Pursuant to California Code of Civil Procedure section 425.16(b)(1), "[a]

20  cause of action against a person arising from any act . . . in furtherance of the

21  person's right of petition or free speech . . . in connection with a public issue shall

22  be subject to a special motion to strike, unless the court determines that the plaintiff

23  has established that there is a probability that the plaintiff will prevail on the claim."

24

25  [2] The "sham pleading" doctrine is based on "[t]he principle . . . of *truthful pleading* .
. . the court will disregard falsely pleaded facts." *Larson v. UHS of Rancho Springs,*

26  *Inc.,* 230 Cal. App. 4th 344, 336 (2014) (citation omitted). By finding that the Miller

27  Firm's pleading of NMS's Article 6 take-out right was not a sham, the Court of
Appeal necessarily found that the pleading was not untruthful and that it did not

28  plead any false facts.

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

In applying Section 425.16, courts consider the pleadings, affidavits and declarations stating the facts upon which the liability or any defense is based. Cal. Civ. Proc. Code § 425.16(b)(2); *Salma v. Capon*, 161 Cal. App. 4th 1275, 1289-90 (2008). The anti-SLAPP analysis has two prongs:

First, defendants must make a prima facie showing that the claims "arise from" protected activity; namely, "any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution . . . ." Cal. Civ. Proc. Code § 425.16(b)(1). "[A] court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis." *Chavez v. Mendoza*, 94 Cal. App. 4th 1083, 1089 (2001). The challenged claims need only arise in part from protected activities. *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 307-08 (2001).

Second, if the claims arise from protected activity, the burden shifts to plaintiffs to show, by "competent, admissible evidence," a probability of prevailing on the merits. *Roberts v. L.A. Cty. Bar Ass'n*, 105 Cal. App. 4th 604, 613-14 (2003). If plaintiffs cannot make this showing, the claim is dismissed and defendants must be awarded attorneys' fees and costs. Cal. Civ. Proc. Code § 425.16(c)(1).[3]

## IV. AEW'S CLAIMS ARE PROTECTED ACTIVITY (FIRST PRONG)

AEW asserts a single cause of action against the Miller Firm for malicious prosecution. (*See* Compl. ¶¶ 116-136.) A claim for malicious prosecution always arises from protected activity: "[b]y definition, a malicious prosecution suit alleges that the defendant committed a tort by filing a lawsuit." *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 735 (2003); *Kleveland v. Siegel & Wolensky, LLP*, 215 Cal. App. 4th 534, 548 (2013). Therefore, AEW has the burden to prove "a probability of prevailing" on its claim. *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th

---

[3] State law claims in federal complaints are subject to an anti-SLAPP motion. *See* Thomas R. Burke, Anti-SLAPP Litigation § 2:110 (Sept. 2018 Update) (collecting cases); *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005).

GARRETT & TULLY
A PROFESSIONAL CORPORATION

1  180, 192 (2005) (citation omitted).

2  **V.     AEW CANNOT ESTABLISH A PROBABILITY OF PREVAILING**

3  **(SECOND PRONG)**

4  "To establish a cause of action for the malicious prosecution of a civil

5  proceeding, a plaintiff must [show] that the prior action (1) was commenced by or at

6  the direction of the defendant and was pursued to a legal termination in his,

7  plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with

8  malice." *Bertero v. Nat'l Gen. Corp.*, 13 Cal. 3d 43, 50 (1974) (citations omitted). In

9  order to make a showing sufficient to withstand an anti-SLAPP motion, AEW

10  "cannot simply rely on the allegations in the complaint." *Paul for Council v.*

11  *Hanyecz,* 85 Cal. App. 4th 1356, 1364 n. 5 (2001). Instead, AEW "must provide the

12  court with sufficient evidence to permit the court to determine whether 'there is a

13  probability that [plaintiffs] will prevail on the claim.'" *DuPont Merck Pharm. Co. v.*

14  *Superior Court,* 78 Cal. App. 4th 562, 568 (2000) (citation omitted). AEW cannot

15  meet its burden here, for the reasons discussed below.

16  **A.     Plaintiff Cannot Establish That The Miller Firm Lacked Probable**

17  **Cause to Prosecute The *Lincoln* Action**

18  In order to establish that the Miller Firm lacked probable cause for pursuing

19  the *Lincoln* Action, AEW must show that the Miller Firm had knowledge sufficient

20  to convince "any reasonable attorney" that NMS's claims were untenable and

21  frivolous: that is, totally and completely without merit. *See Sheldon Appel,* 47 Cal.

22  3d at 885 (in order to avoid a "chilling effect on the assertion of litigants' rights," an

23  attorney's actions should only be deemed "frivolous" where "any reasonable

24  attorney" would agree that the action was "totally and completely without merit"

25  (citation omitted)).

26  The existence or nonexistence of "probable cause" is a question of law to be

27  determined by the trial court rather than the jury. 47 Cal. 3d at 884; *Plumley v.*

28  *Mockett,* 164 Cal. App. 4th 1031, 1047 (2008). An objective test applies – i.e.,

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

1  whether any reasonable attorney would have thought the claim tenable. *Franklin*

2  *Mint Co. v. Manatt, Phelps & Phillips, LLP*, 184 Cal. App. 4th 313, 333 (2010);

3  *Marijanovic v. Gray, York & Duffy*, 137 Cal. App. 4th 1262, 1271 (2006). Under

4  this standard, "[p]robable cause is a low threshold designed to protect a litigant's

5  right to assert arguable legal claims even if the claims are extremely unlikely to

6  succeed.'" *Uzyel v. Kadisha*, 188 Cal. App. 4th 866, 927 (2010); *Sheldon Appel*, 47

7  Cal. 3d at 886. This rather lenient standard for bringing a civil action reflects "the

8  important public policy of avoiding the chilling of novel or debatable legal claims."

9  *Sheldon Appel*, 47 Cal. 3d at 885. Attorneys "have a right to present issues that are

10  arguably correct, even if it is extremely unlikely that they will win . . . ." *Id.* (citation

11  omitted); *see also Grindle v. Lorbeer*, 196 Cal. App. 3d 1461, 1467 (1987)

12  ("Zealous representation sometimes requires an attorney to go out on a limb, to be

13  innovative and creative in fashioning theories of liability or defense.").

14         In determining whether an action was supported by probable cause, the court

15  must construe the allegations and evidence in the underlying suit liberally, and in a

16  light most favorable to the plaintiff in that action, i.e., malicious prosecution

17  defendant. *Sangster v. Paetkau*, 68 Cal. App. 4th 151, 164-65 (1998). The Miller

18  Firm was not required to predict how a trier of fact would weigh competing

19  evidence, or to abandon its claim if it thought that the evidence would ultimately

20  weigh against its client. *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 824

21  (2002). Indeed, the Miller Firm's ethical obligation required that it resolve all

22  reasonable doubts in favor of its client, NMS. *Model Rules of Prof'l Conduct*

23  r. 3.4(b) (Am. Bar Ass'n 2018); Model Code of Prof'l Responsibility DR 7-

24  102(A)(4), EC 7-6 (Am. Bar Ass'n 1980). This rule is not altered by the fact the

25  client's adversary disputes the client's representations, or even if the attorney doubts

26  the client's credibility. *Tool Research & Eng'g Corp. v. Henigson*, 46 Cal. App. 3d

27  675, 684 (1975), *disapproved on other grounds by Sheldon Appel*, 47 Cal. 3d at

28  882–83.

GARRETT & TULLY
A PROFESSIONAL CORPORATION

NOTICE OF MOTION FOR SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

334629.DOCX

Finally, AEW's "group pleading" of allegations against all defendants in order to conflate the Miller Firm attorneys with its client and other attorneys is improper as a matter of law. (*See, e.g.*, Compl. ¶¶ 4, 6, 10, 61, 88-89.) AEW may not impute to the Miller Firm the knowledge or acts of its client to satisfy AEW's burden to prove a lack of probable cause on the part of the Miller Firm. *Zeavin v. Lee*, 136 Cal. App. 3d 766, 772-73 (1982) (client's conduct cannot be imputed to the attorney in malicious prosecution action).

### 1.    There Was Probable Cause for the Allegations in the TAC

#### (a)    Evidence Supported the Article 6 Claim in the TAC

AEW alleges that the Miller Firm did not have probable cause to plead that Article 6 of the JVA provided NMS with a take-out right, as set forth in the TAC. (Compl. ¶¶ 49, 81, 107, 131.) This is incorrect.

After the Miller Firm took over as lead counsel in the *Lincoln* Action, it prepared and filed the TAC. (Miller Decl. ¶ 21; Ex. 2.) The 28-page TAC streamlined the case for trial and reduced the causes of action from 34 to 6. (*Id.*) The TAC alleged that Article 6 of the JVA – which had been the basis for NMS's June 2013 tender and was implicated by AEW's buy-out proposal in March 2015 – gave NMS the right to take out AEW's interest in the JV per the Monetization Formula.

In the streamlined TAC, NMS alleged that pursuant to Article 6 of the JVA, NMS had the right to take out, or monetize, AEW's interest within 5 years. Article 6.1 prescribes different profit distributions to AEW in seven successive stages – what is known as a "waterfall provision." (Ex. "B" to TAC (Ex. 2), pp. 35-36.) As the TAC alleged, Article 6 provides that at the final stage, the distributions schedule would cease to exist because at that point AEW received all of the funds it was due: "*one hundred percent (100%) shall be distributed to Operating Member* [NMS] if within five (5) years from the date hereof Investor Member [AEW] receives all amounts it is entitled to receive under Article 6.1(i) through (vi)"; that is, either a 24% return-on-investment or 1.75 times AEW's capital contributions. (Art.

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

6.1(b)(vii) (emphasis added).) Article 6 also negated AEW's right to any distribution if the business ever liquidated. (Article 6.2 incorporates Article 6.1 waterfall.) Accordingly, if "within five years," AEW received the prescribed 1.75/24%-return, AEW's economic interest in the JV would be eliminated forever – what the parties call a "take-out." (Ex. 2 (TAC), ¶¶ 8-10, 13, 22, 25-26.)

The Miller Firm's interpretation of Article 6 was reasonable and in accord with well-settled rules of contractual interpretation. "The court will if possible give effect to all parts of the instrument and an interpretation which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable; and if this is impossible an interpretation which gives effect to the main apparent purpose of the contract will be favored." *Heidlebaugh v. Miller*, 126 Cal. App. 2d 35, 38 (1954) (citing *McNeil v. Graner*, 91 Cal. App. 2d 858, 863–64 (1949)).

To construe Article 6 to mean that, even after AEW had been paid its full distribution under the seventh stage of the waterfall, and regardless of whether it was paid by NMS or paid via distributions declared by AEW, AEW would remain as a member would have been contrary to the economic and practical operation of the JV. It would also have been contrary to the points negotiated by the parties, as confirmed in various documents. In short, it was reasonable to construe Article 6 as providing that upon completion of the final stage of the waterfall, AEW's interest in the JV would be bought out by NMS and converted to money – that is, "monetized."

Moreover, the law is clear that where there is extrinsic evidence relevant to contract interpretation, the evidence must be considered. Therefore, a court may not interpret a contract on demurrer "without allowing the parties an opportunity to present extrinsic evidence" relevant to the interpretation. *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 114-15 (2007).

The extrinsic evidence supported the allegations in the TAC that the parties knew and agreed that Article 6 of the JVA provided NMS with a take-out right as

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

distinct from the Article 11 buy/sell rights afforded to both NMS and AEW:

- **May 2010 "Mazel Tov" Email:** On May 19, 2010, AEW's Eric Samek sent NMS an email congratulating NMS on the deal and confirming the Monetization Right: "AEW minimum equity multiple [would be] 1.75" and that "[i]f NMS monetizes all of AEW's investment within 5 years then NMS will keep all proceeds above AEW's 24% return." (Ex. 2, Ex. A.)

- **May 2010 Term Sheet:** AEW further confirmed the deal by sending NMS a term sheet that stated that if AEW's investment has been "monetized … within five years," then 100% of the JV's proceeds would go to NMS. (Ex. 5.)

- **August 2010 AEW Investment Committee Memo:** An internal AEW memo showed that AEW understood and based its projections on the assumption that if it received a 24% return on its invested capital, its interest in the JV would go to zero. (Ex. 41, p. 11.)

- **Property Transfers by NMS/Shekhter:** NMS/Shekhter transferred to the JV four properties at below fair market value. NMS only did this because of Samek's assurances that this "would be of no moment because of [NMS's] right and intention to take-out AEW's interest within a few years . . . ." The below market transfers make no sense if NMS did not have a take-out right. (Ex. 2, ¶ 21.vii.)

- **April 2013 Meeting:** NMS and AEW had a meeting at a restaurant in Culver City where they discussed buying out AEW's interest in the JV per the take-out right. Specifically, they discussed various ways to effectuate the take-out, including bringing in outside money through loans or having NMS sell or use equity in their other properties to buy out AEW; and thereafter exchanged projections to effectuate the take-out. (Ex. 23, ¶ 84; Ex. 37 at 163:7-169:12.)

- **June 2013 Letter:** Per the discussions above, NMS notified AEW that it intended to pay back AEW's interest, as provided for in Section 6.1 of the JVA. NMS stated therein that, under Section 6(b) of the JVA, AEW's interest in the JV would become zero if, within five years of the formation of the JV, AEW had received 1.75 times its invested capital and a 24% IRR. (Ex. 6.)

**(b)      AEW's Conduct Confirms That the Miller Firm Had Probable Cause to Pursue the *Lincoln* Action**

In construing the terms of a contract, the acts and conduct of a party with knowledge of its terms, and before a controversy arose, are relevant to the parties'

GARRETT & TULLY
A PROFESSIONAL CORPORATION

1  intentions at the time of contracting. *S. Pac. Transp. Co. v. Santa Fe Pac. Pipelines,*

2  *Inc.*, 74 Cal. App. 4th 1232, 1242 (1999).

3  　　　AEW has asserted that when it received the allegedly forged "Version 2" of

4  the JVA on July 19, 2013, it believed at that time Version 2 "must be a forgery"

5  because the terms of the Buy-Sell in Article 11 had been changed. (Samek

6  September 21, 2015 Decl. ¶ 6 (Ex. 11).) Notwithstanding this assertion, in March

7  2015 – before AEW was sued in the *Lincoln* Action – NMS and AEW had a

8  meeting during which the parties discussed NMS's right to take-out, or monetize,

9  AEW's interest in the JV under Section 6. (Declaration of James Goldman

10  ("Goldman Decl.") ¶ 9 and Ex. 12.) Shortly thereafter, in March 2015, AEW made

11  an offer to allow NMS to buy-out AEW for "24% of IRR on AEW's capital

12  contributions, "that is, $135 million. (Ex. 12; Goldman Decl. ¶ 10.) This buy out of

13  AEW at "24% of IRR" is quoted from Article 6.1 of the JVA which – entirely

14  consistent with AEW's own June 2013 buy-out proposal – the Miller Firm alleged

15  in the TAC gave NMS that same buy-out right. (*See* March 10, 2015 AEW email to

16  NMS and attached settlement term sheet (Ex. 12); *compare to* JVA (Ex. B to TAC,

17  Ex. 2) pp. 35-36; TAC ¶¶ 8-10, 13, 22, 25-26.)

18  　　　**(c)    Third-Party Witnesses Confirmed the Take-Out Right**

19  　　　Two separate third-party witnesses unaffiliated with NMS confirmed that

20  AEW promised NMS the buy-out right: (i) Ed Zimbler and (ii) Daniel Lennon.

21  (Zimbler Depo. (Ex. 35) at 26:15-27:16; Ex. 14.) Zimbler, the broker who put NMS

22  and AEW together, testified that he introduced NMS to AEW because AEW's

23  Samek told him that AEW had a unique JV program under which NMS could "take-

24  out" AEW's interest in the JV. (Zimbler Depo. (Ex. 35) at 68:19-69:18) He

25  confirmed that the take-out right was different than the buy/sell right which appears

26  in Section 11. (*Id.* at 40:24-41:2, 42:16-44:7.)

27  　　　Lennon worked under Samek at AEW. (Ex. 14¶ 8.) In a sworn declaration,

28  Lennon confirmed that Shekhter's understanding of the buy-out provision in Article

6 was exactly the same as AEW/Samek's. (*Id.* ¶ 10.) Samek told Lennon that NMS had the right to monetize AEW within five years by paying AEW 1.75 times AEW's investment or a 24% yearly return, whichever was greater. (*Id.*) All of AEW's underwriting on the deal was based on the same understanding. (*Id.* ¶ 11.)

But Samek also told Lennon that even though this was the deal, unbeknownst to Shekhter, AEW did not intend to let Shekhter monetize AEW's investment in the JV. (*Id.* ¶ 12.) AEW/Samek concealed AEW's true intentions regarding the JV from Neil. (*Id.*) [4]

### (d) Another Court Confirmed That NMS's Article 6 Claim Had Merit

NMS Properties, Inc. ("NMS Properties"), an affiliate of NMS, managed the Properties. (P6 Compl. (Ex. 34), ¶ 1.) While the *Lincoln* Action was pending, AEW filed the *P6* Action. In it, AEW sought to terminate NMS Properties as manager and cause it to vacate the buildings. (*Id.,* Prayer for Relief.)

In June 2016, AEW sought an injunction against NMS Properties, forcing it to hand over possession of the Properties. (Ex. 38.) In opposing the motion, NMS showed that it had made a $106 million buy-out offer under Article 6 of the JVA, thus zeroing out AEW's interest in the JV and eliminating its authority to terminate NMS Properties. (Ex. 39.) The court (Judge Johnson) denied the injunction, holding that "[o]n the merits, the evidence is sharply divided in all areas of the case" and

---

[4] Lennon also testified that he believes he and AEW received the cover letter from Samek to Shekhter enclosing Version 2 of the JVA – which AEW contradictorily alleged in the *Lincoln* Action, and now again in its current complaint, was never received and is a forgery. (*See* Lennon Decl. (Ex. 14) ¶ 9; *cf* Compl. ¶¶ 65, 68, 82, 95, 103(n), 105(b), 121.) Mr. Lennon further testified he had no reason to believe that NMS forged anything. (Lennon Decl. (Ex. 14) ¶¶ 9, 18.) At the evidentiary hearing on AEW's motion for sanctions, Lennon testified to the same effect; he said he had no reason to believe Version 2 of the JVA attached to the September 2010 cover letter was a forgery. (Transcript of October 25, 2016 hearing (Ex. 15), pp. 139-42, 150, 155.)

GARRETT & TULLY
A PROFESSIONAL CORPORATION

NOTICE OF MOTION FOR SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

334629.DOCX

1  that "[NMS] has raised legitimate issues concerning [AEW's] authority to terminate

2  the management agreements in light of the provisions contained in the joint venture

3  agreement [Section 6.1]." (Ex. 38, p. 2.) Judge Johnson held: "The Court finds that

4  the evidence is so sharply disputed that plaintiff *[AEW] have not established a*

5  *reasonable probability of success.*" (*Id.* (emphasis added).)

6  The Miller Firm's defeat of AEW's injunction motion alone establishes

7  probable cause. *See Paiva v. Nichols,* 168 Cal. App. 4th 1007, 1011 (2008);

8  *Fleishman v. Superior Court*, 102 Cal. App. 4th 350, 357 (2002).

9  **2.  The Miller Firm Had Probable Cause to Defend NMS With**

10  **Respect to Discovery Misconduct Allegations**

11  **(a)  NMS's Experts Disproved AEW's Allegations**

12  Counsel's reliance on expert opinions supporting the claims of the client

13  establishes the claims were "objectively tenable" and thus probable cause existed.

14  *See Bixler v. Goulding*, 45 Cal. App. 4th 1179, 1189-90 (1996) (citation omitted);

15  *New Albertsons, Inc. v. Superior Court*, 168 Cal. App. 4th 1403, 1431 (2008) (where

16  two sets of experts offer opposing opinions concerning purported spoliation, the jury

17  should decide the issue).

18  In January 2016, AEW filed its motion for terminating sanctions based on

19  alleged discovery violations and the alleged forgeries. (Ex. 26) In opposition to the

20  motion, the Miller Firm offered the testimony of four experts: Valery Aginsky,

21  Kathleen Nicolaides, William Flynn and Scott Cooper. These experts opined that the

22  allegations of forgeries and spoliation against NMS were incorrect, not supported by

23  evidence, based on the application of a methodology that is not generally accepted

24  (and therefore inadmissible under the *Daubert* standard),[5] inconsistent and

25  speculative. (Ex. 16 ¶¶ 18-26; Ex. 17 ¶¶ 13-14, 38, 40-41; Ex. 18 ¶¶ 19-20, 31, 37,

26  39, 43-44, 50-51, 54, 56, 59-60, 63-64; Ex. 19 ¶¶ 7-9, 12, 14, 16-21, 23-32, 41-44,

27

28  [5] *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

NOTICE OF MOTION FOR SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

48, 52, 58-60, 65, 69.)[6]

AEW did not subpoena any NMS witness to appear at the hearing, nor did it subpoena anyone at the Miller Firm. (See, Exs. 8, 28, 32.) Yet, in this case, AEW claims the Miller Firm's decision not to call certain witnesses and introduce evidence shows that the firm lacked probable cause to defend AEW's claims.[7] (Compl. ¶¶ 87, 125.) But that's not the law. The Miller Firm may not be held liable for defending AEW's claims against NMS, because there is no such thing as "malicious defense" in California. *Bertero*, 13 Cal. 3d at 52. Similarly, tactical and strategic decisions of counsel at trial and in evidentiary hearings are left to the judgment of counsel, and courts are loathe to second-guess such decisions. *People v. Mitcham*, 1 Cal. 4th 1027, 1059 (1992). Such decisions are inadequate to satisfy AEW's burden to prove a lack of probable cause on the part of the Miller Firm. (*Id.*)

---

[6] NMS's experts refuted AEW's claims of forgery, testifying that based on the forensic evidence, there was no evidence that Version 2, the "cover letter," or the La Cienega PMA was a forgery. (*Id.*) They also disputed AEW's contentions regarding spoliation. For example, Cooper testified that AEW's expert Samuel Rubin's opinion that over 800 documents had not been produced by NMS was wrong. Rubin in fact only identified 13 "missing" documents, and the review of Rubin's own work showed that eight of those documents had been provided by NMS – meaning that of the 55 terabytes of data (the equivalent of 5.5 million bankers boxes, or 1500 miles of paper laid end-to-end), AEW's expert could only identify five missing documents. (Ex. 19 ¶¶ 69, 100.) During the evidentiary hearing, Rubin admitted that he had not identified any spoliation on NMS's computer networks, servers, or backup media collected through the forensic examination and that he did not identify any spoliation relating to the JV records. (Ex. 32 at 6:5-19, 14:11-24, 15:21.)

[7] As a result of AEW's objection, the trial court prevented NMS from calling its executive, Dino Ciarmoli ("Ciarmoli"), who would have confirmed that the JV records were maintained on NMS's servers – and not Shekhter's personal home computer – and that all of the data was provided to AEW (i.e., no spoliation). (Declaration of Dino Ciarmoli (Ex. 40), ¶¶ 5-24.)

### (b)    <u>The Miller Firm Was Blocked from Getting Discovery</u>

AEW alleges that the Miller Firm conducted no investigation or discovery concerning AEW's claims of forgeries, spoliation and misconduct. (Compl. ¶ 118.) The claim is false. It is also disingenuous. In fact, the Miller Firm made substantial efforts to investigate and conduct discovery, but AEW obstructed those efforts every step of the way.

Among many other things, the Miller Firm requested that NMS's experts be permitted to forensically examine AEW's electronic data based on the self-evident – and fair – proposition that it was necessary to examine the data of both sides to determine whether Shekhter or AEW had created Version 2. After all, if NMS's examination disclosed that the alleged forgeries were on AEW's computers, then AEW's claims of forgery would be invalidated. (January 19, 2016 NMS motion for forensic examination (Ex. 13).) AEW refused the request and opposed NMS's motion to compel the examination. The *Lincoln* court refused to hear the motion. (Frid Decl., ¶ 11.)[8]

The Miller Firm also sought to depose AEW's experts, and obtain their files and documents supporting their opinions on forgery and spoliation in advance of the October 2016 evidentiary hearing. AEW refused, and blocked the depositions. The court ultimately denied NMS's motion to compel those depositions. (November 22, 2016 order (Ex. 2 to Complaint) (Ex. 38), pp. 90-91.) In fact, AEW blocked all attempts by the Miller Firm to conduct written discovery and depositions of all witnesses to determine what actual evidentiary support AEW had for its claims. (*See*

---

[8] The critical need for this examination was all the more supported by the evidence of AEW's misconduct regarding the JVA: AEW itself had manipulated at least two other "versions" of the JVA by cutting and pasting NMS's signature from another agreement onto it, without authorization. (Ex. 13, NMS motion for examination January 19, 2016, p. 12; Ex. 24, Shekhter January 27, 2016 Declaration ¶¶ 9-16; *see also* Miller Firm's PowerPoint compendium of evidence of AEW's violations of the *Lincoln* court's forensic order (Ex. 41), pp. 25-27.)

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

Lennon January 16, 2016 Declaration (Ex. 14) ¶ 19 [AEW's counsel sought the witness's agreement to be represented by AEW's counsel to further AEW's "goal . . . to keep everyone from being deposed"].)[9] The Miller Firm was prevented from taking a single deposition, and AEW never produced a single document in response to NMS's discovery requests. (See, Frid Decl., ¶ 12.)

### (c) Sanctions Were Denied by Judge Johnson

In June 2016, AEW filed a motion for terminating sanctions in the P6 Action based on the same facts that AEW alleged in the *Lincoln* Action – and which AEW re-alleges in this case. (*See* AEW motion for sanctions in *P6* Action (Ex. 20), pp. 7-10 (same forgeries alleged in Complaint, e.g., ¶¶ 4-8, 10, 38-47, 54-55, 65-68, 82, 95-96); pp. 10-13 (same destruction and spoliation of evidence alleged in, e.g., Complaint, ¶¶ 73-77, 82, 86, 97-102, 103(s), (u)-(y), 106(a)-(c)); p. 15 (same allegations of knowledge, participation and "willfully blind to the truth" against the Miller Firm alleged in, e.g., Complaint ¶¶ 10, 98, 118, 122, 127).)

Judge Johnson denied the motion on the same record that was before Judge Bruguera. He held: "plaintiffs [AEW on behalf of P6] have accused defendant [NMS] of committing acts of serious misconduct, such as forgery, false testimony and the destruction of evidence . . . *this is a dispute for the determination by the trier of fact*." (July 5, 2016 Notice and Minute Order of Judge Johnson in *P6* Action (Ex. 21) (emphasis added).) Denial of a motion based on factual issues to be tried by the judge or jury demonstrates probable cause. *Roberts v. Sentry Life Ins.*, 76 Cal. App. 4th 375, 383 (1999). A claim that persuaded a judge establishes probable cause. *Cowles v. Carter*, 115 Cal. App. 3d 350, 359 (1981).

---

[9] *See Williamson v. Superior Court*, 21 Cal. 3d 829, 836-39 (1978) (agreement to suppress evidence of a witness is illegal). AEW's obstructions implicate unclean hands as an additional defense that bars its claims of malicious prosecution against the Miller Firm. *Pond v. Ins. Co. of N. Am.*, 151 Cal. App. 3d 280, 289-91 (1984).

GARRETT & TULLY
A PROFESSIONAL CORPORATION

334629.DOCX

GARRETT & TULLY
A PROFESSIONAL CORPORATION

**B.    AEW's Claim Against The Miller Firm Is Barred By The Interim
Adverse Judgment Rule**

California courts have held that certain interim rulings in the underlying case
– e.g., denial of a summary judgment motion – establish the existence of probable
cause to pursue the underlying claim. *See, e.g., Plumley v. Mockett*, 164 Cal. App.
4th 1031, 1052 (2008).[10] This has been referred to as the interim adverse judgment
rule. The rationale is that the trial court had an opportunity to determine whether the
underlying claim had merit when considering the motion and decided it had the
minimal merit to allow it to proceed. *See Cowles,* 115 Cal. App. 3d at 358; *Plumley,*
164 Cal. App. 4th at 1052 ("Claims that have succeeded at a hearing on the merits,
even if that result is subsequently reversed by the trial or appellate court, are not so
lacking in potential merit that a reasonable attorney or litigant would necessarily
have recognized their frivolousness." (citation omitted)).

As discussed above, the court in the *P6* Action denied AEW's request for
preliminary injunction on the grounds that there was a valid dispute between the
parties as to whether Section 6 of the JVA permitted NMS to take-out AEW's
interest in the JV within five years. (Ex. 38.) That court also denied AEW's motion
for terminating sanctions, finding that there were issues of fact regarding AEW's
claims, and that each side had accused the other of forging certain documents. (Ex.
21.) Although these findings were not binding in the *Lincoln* Action, for purposes of
this case, they establish that the Miller Firm had probable cause to pursue NMS's
claims, including the claim that AEW breached Section 6 of the JVA by not

---

[10] *See also Wilson*, 28 Cal. 4th at 817 n.2 (citing *Bealmear v. S. Cal. Edison Co.*, 22
Cal. 2d 337, 340 (1943)); *Carpenter v. Sibley*, 153 Cal. 215, 218 (1908); *Holliday v.
Holliday*, 123 Cal. 26, 32 (1898); *Cowles*, 115 Cal. App. 3d at 356, 359; *Fairchild v.
Adams*, 170 Cal. App. 2d 10, 15 (1959); *Crescent City Live-Stock Landing &
Slaughter-House Co. v. Butchers' Union Slaughter-House & Live-Stock Landing
Co.*, 120 U.S. 141, 149-51 (1887); *Antounian v. Louis Vuitton Malletier*, 189 Cal.
App. 4th 438, 450-51 (2010).

1  accepting NMS's June 2016 tender offer.

2      Probable cause is further established by the fact that AEW asked for the same

3  relief it seeks here in its sanctions motions filed in the *Lincoln* Action and *P6*

4  Action, and both courts rejected it. Specifically, AEW argued that the Miller Firm

5  should be sanctioned and held liable for AEW's attorneys' fees and costs for its

6  knowledge of and participation in NMS's alleged misconduct – the same allegations

7  AEW has made in this case. (Ex. 20, pp. 1-2, 15; Ex. 26.), pp. 23-24, 32, 40-42.)

8  AEW also asked the court to report the Miller Firm to the State Bar for its alleged

9  ethical violations. (Ex. 29, pp. 3, 41, 50.)

10     The Miller Firm opposed AEW's sanctions motion and submitted evidence

11 showing that it did not have any knowledge or involvement in any of the alleged

12 wrongdoing, and that the motion followed AEW's earlier threats against the Miller

13 Firm about representing NMS. (Nov. 7, 2016 Miller Decl., Ex. 42.) After being

14 presented with, considering, and hearing AEW's arguments and evidence –

15 including at the eight-day evidentiary hearing – Judge Bruguera rejected AEW's

16 claims against the Miller Firm. (*Compare* Ex. 29 *with* Ex. 33.)

17     Here, the fundamental foundation of AEW's claims are the motions, the

18 evidentiary hearing and the orders of the Superior Court in the *Lincoln* Action –

19 AEW in fact specifically relies on the pleadings and orders regarding its sanctions

20 motion, and attaches and incorporates them into its Complaint. (Compl. ¶¶ 1-11, 71-

21 136 and Exs. 1-3.) The claims of intentional wrongdoing and fraudulent

22 representation it asserts against the Miller Firm in this case are identical to the

23 claims AEW aggressively and repeatedly pursued against the Miller Firm in the

24 *Lincoln* Action. (*See, Id.* ¶¶ 10, 11, 91, 118, 122, 127-29; *compare to* Motion for

25 Sanctions (Ex. 26.), pp. 23-24, 32, 40-42.) The Superior Court rejected AEW's

26 claims. (Ex. 33.)

27     The same thing happened in the *P6* Action – AEW requested that the Miller

28 Firm be sanctioned and reported to the State Bar for pursuing NMS's claims. (Ex.

GARRETT & TULLY
A PROFESSIONAL CORPORATION

1  20, pp. 1-2, 15.) Judge Johnson also rejected AEW's claims against the Miller Firm.

2  (*See* Ex. 21.)

3        At no time did AEW move for reconsideration of the orders in the *Lincoln*

4  *Action* or *P6 Action*. (Miller Decl. ¶ 29.) Neither did AEW appeal those orders. (*Id.*)

5  Thus, in addition to its claims being barred under the interim adverse judgment rule,

6  AEW's claims against the Miller Firm are also barred as an improper collateral

7  attack on two orders of the Superior Court. *See Ricard v. Grobstein, Goldman,*

8  *Stevenson, Siegel, LeVine & Mangel*, 6 Cal. App. 4th 157, 162 (1992); *Panos v.*

9  *Great W. Packing Co.*, 21 Cal. 2d 636, 640 (1943).

10       **C.    AEW Cannot Establish The Miller Firm Acted With Malice**

11       AEW's malicious prosecution claim separately fails because AEW cannot

12  show that the Miller Firm acted with malice in either the filing or prosecution of the

13  *Lincoln* Action.

14       Malice requires a showing of subjective intent or deliberate misuse of the

15  legal system, i.e., actual hostility or ill will by the defendant towards the malicious

16  prosecution plaintiff. *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 494,

17  498-99 (1998); *Kleveland,* 215 Cal. App. 4th at 553–54; *see also Daniels v.*

18  *Robbins*, 182 Cal. App. 4th 204, 224 (2010) ("The motive of the defendant must

19  have been something other than that of . . . the satisfaction in a civil action of some

20  personal or financial purpose.") This showing must be based on affirmative

21  evidence and not simply speculative inferences or conclusory allegations.

22       *Daniels* is on point. The Court of Appeal affirmed the trial court's grant of a

23  SLAPP motion of a malicious prosecution lawsuit filed against attorneys where –

24  like here – in the underlying case, the trial court granted terminating sanctions based

25  on plaintiff's discovery misconduct. *Daniels,* 182 Cal. App. 4th at 210-11. The

26  *Daniels* court held that attorneys in the underlying case cannot be held liable for

27  malicious prosecution where the underlying case was terminated for discovery abuse

28  in which the attorney was not involved. *Id.* at 227.

**GARRETT & TULLY**
A PROFESSIONAL CORPORATION

32                        Case No. 2:19-cv-01150-AB-AFMx
NOTICE OF MOTION FOR SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL
PROCEDURE SECTION 425.16

334629.DOCX

1   Additionally, in *Daniels*, the court that when there is no evidence of any "ill
2   will" or "improper ulterior motive," there can no claim for malicious prosecution.
3   *Id.* at 224. Here, there is *no evidence* that the Miller Firm harbored any ill will or
4   hostility towards AEW, or that any of its actions were driven by an intent to misuse
5   the legal process for an improper purpose. (Miller Decl., ¶ 16; Frid Decl. ¶ 19;
6   Goldman Decl., ¶ 19; Tokoro Decl., ¶ 20.) That is because none exists. The Miller
7   Firm was doing its job and representing its client in the *Lincoln* Action.

8   Instead, AEW speculates that "[t[he only explanation" for the Miller Firm's
9   representation, defense and assertion of claims for its client NMS is that the Miller
10  Firm must have been "actively involved" in NMS's misconduct." (Compl. ¶¶ 98,
11  122.) Not only is this nonsense, but it also still fails to show that any of the actions
12  taken by the Miller Firm were driven by hostility towards AEW. The Miller Firm in
13  fact has shown by affirmative evidence that it did not have any knowledge of or
14  participate in the alleged misconduct. (See, Miller Decl., ¶ 13; Frid Decl. ¶ 11;
15  Goldman Decl., ¶ 13; Tokoro Decl., ¶ 13.)

16  **VI.    CONCLUSION**

17  For the foregoing reasons, pursuant to Section 425.16, the Miller Firm
18  respectfully requests that the Court grant this Motion in its entirety, strike AEW's
19  Complaint, and award the Miller Firm its reasonable attorneys' fees and costs
20  pursuant to further motion.

21  DATED: April 18, 2019         GARRETT & TULLY, P.C.

24                          STEPHEN J. TULLY
25                          Attorneys for Defendants Miller Barondess,
                            LLP, Louis R. Miller, James Goldman,
26                          Alexander Frid, and Jason Tokoro

**GARRETT & TULLY**
A PROFESSIONAL CORPORATION

334629.DOCX

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF VENTURA**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Ventura, State of California.  My business address is 4165 E. Thousand Oaks Blvd., Suite 201, Westlake Village, CA 91362-3839.

On April 18, 2019, I served true copies of the following document(s) described as **NOTICE OF SPECIAL MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 18, 2019, at Westlake Village, California.

Rusty Holmgren

GARRETT & TULLY
A PROFESSIONAL CORPORATION