Steven Zelig, SBN 094654
WLA LEGAL SERVICES, INC.
1543 7th St., Suite 300
Santa Monica, California 90401
T: 310/393-6702 F: 310/393-6703

Attorneys for Defendants Steven Zelig, WLA Legal Services, Inc. and Brentwood Legal Services, LLP, erroneously sued and served as Brentwood Legal Services

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| P6 LA MF Holdings SPE, LLC, a limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>NMS CAPITAL PARTNERS I, LLC; BRENTWOOD LEGAL SERVICES; STEVEN ZELIG; GENGA & ASSOCIATES, P.C.; WLA LEGAL SERVICES, INC,; JOHN GENGA; MILLER BARONDESS LLP; LOUIS R. MILLER, JAMES GOLDMAN; ALEXANDER FRID; JASON TOKORO; AND DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:19-cv-01150-AB-AFMx<br><br>(Hon. Andre Birotte, Jr.)<br><br>DECLARATION OF STEVEN ZELIG IN SUPPORT OF SPECIAL MOTION TO STRIKE THE COMPLAINT BY DEFENDANTS STEVEN ZELIG AND BRENTWOOD LEGAL SERVICES, LLP PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16<br><br>DATE: May 24, 2019<br>TIME: 10:00 a.m.<br>CRTRM: 7B |

DECLARATION OF STEVEN ZELIG IN SUPPORT OF SPECIAL MOTION TO STRIKE THE COMPLAINT BY DEFENDANTS STEVEN ZELIG AND BRENTWOOD LEGAL SERVICES, LLP PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 - 1

I, Steven Zelig, declare as follows:

1. I have personal knowledge of the following facts.

2. I attended Loyola Law School and did well. I received an honorary scholarship. I graduated in 1980 and passed the Bar on my first attempt.

3. I am an attorney duly licensed to practice law in California. I have been licensed since 1980. I consider myself a "general" litigation practitioner and trial lawyer. I specialize in litigation and trial, especially in insurance bad faith, medical/legal and insurance agency malpractice, construction defect litigation, personal injury, civil rights/inverse condemnation and other general areas of law. I am not a specialist in business law or business litigation, and have never been involved in a dispute or litigation involving a complicated and convoluted joint venture agreement such as the one before us.

4. I have represented Neil Shekhter and various entities with whom he is affiliated since 1994. In my opinion and observation, Mr. Shekhter is an extreme straight shooter and a very honorable person. It is my privilege and honor to represent him and to be his friend.

4.1 I, WLA and BLS were not involved in the events of 2010 involving NMS, Shekhter, AEW and Zimbler.

5. Brentwood Legal Services, LLP was the name of the entity under which I operated from around 2001 until the late summer of 2012. The name of the entity was based on the location of the office in the heart of Brentwood California. In or about 2012, the office moved to Santa Monica at which time a

DECLARATION OF STEVEN ZELIG IN SUPPORT OF SPECIAL MOTION TO STRIKE THE COMPLAINT BY DEFENDANTS STEVEN ZELIG AND BRENTWOOD LEGAL SERVICES, LLP PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 - 2

corporation, WLA Legal Services, Inc., was formed and became a member of WLA Legal Services, LLP. Because I had active cases in which Brentwood Legal Services, LLP was counsel of record, we continued using that name until the cases resolved. Hence, for a short while, I was involved in cases under the auspices of both Brentwood Legal Services, LLP and WLA Legal Services, Inc. As the Court can see from the pleadings and other documents generated in the dispute between NMS and AEW, at no time of which I am presently aware or which I can recall, was Brentwood Legal Services, LLP or Brentwood Legal Services, Inc. ever named on a pleading or other litigation related documents. I brought up this issue with Mr. Srinivasan and Mr. Fogelman in my meet and confer with them, which is more fully discussed in paragraph 38, below. In sum, Brentwood Legal Services, LLP and Brentwood Legal Services, Inc., were not involved in any dispute between AEW and NMS.

6.   In July of 2014, I filed suit on behalf of NMS in a matter styled *Lincoln Studios v. DLA, etc.* Initially, AEW was not named in the lawsuit. The matter was assigned to Judge Bruguera.

7.   In November of 2014, in response to a subpoena, I received documents from Ed Zimbler, which shocked me because they demonstrated that Zimbler and AEW had worked together to "engineer" and to cause the "marriage of Shekhter's "slate of properties" to AEW, and that same had "not been orchestrated casually." More specifically, Zimbler produced documents generated by his lawyer Andrew Friedman in October of 2010 to the effect: (1) That Zimbler had "engineered a relationship and a set of transactions resulting in (AEW's) marriage to Neil and his slate of Santa Monica developments"; (2) That Zimbler "cemented AEW's opportunity to invest in (Neil's) projects"; (3) That Zimbler

DECLARATION OF STEVEN ZELIG IN SUPPORT OF SPECIAL MOTION TO STRIKE THE COMPLAINT BY DEFENDANTS STEVEN ZELIG AND BRENTWOOD LEGAL SERVICES, LLP PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 - 3

delivered Neil, a "needle in a haystack," to AEW; and (4) That same had not been orchestrated casually." (Attached hereto as Exhibit 44 is a true and correct copy of this letter.) This data was significant to me because it demonstrated that Zimbler and AEW had secretly acted in concert to induce NMS to enter into the joint venture, and that AEW was dishonest to the core.

8. In another matter, I personally took the deposition of Ed Zimbler. Attached to the Appendix as Exhibit 35 is a true and correct copy of the deposition transcript of Ed Zimbler.

9. Zimbler testified: (1) That Zimbler introduced NMS to AEW because AEW's Samek told him that AEW had a unique JV program under which NMS could "take-out" AEW's interest in the JV. (Ex. 35, pp. 68:19-69:18); (2) That Zimbler was the "common denominator between Shekhter and Samek (Ex. 35, p 24:19); (3) That AEW was offering a "buy-out right" that was distinctly different then a buy/sell (Id., p. 26:3-14); (4) That Samek, Neil and Zimbler discussed the "buyout provision" (Id., pp. 26:15-18, 40:24-41:2, 42:16-44:7); (5) That **after** January 1, 2011, Zimbler spoke to Samek about the "buyout provision included in the contract between AEW and NMS," and that Samek never "disabused" Zimbler of his perception (Id, p. 68:19-69:5); (6) At no time did Samek ever say that the "buyout" right didn't exist or that "that's not the deal with (Shekhter)" (Id., p. 69:11-18); (7) That a "couple years later", "Zimbler "100% believed, that Neil had this buyout right. Not a buy/sell. A buyout right." (Id., p. 87:24-88:2); (8) That "there was never one second or one iota of a minute that (Zimbler) ever thought that (Shekhter) did not have the buyout option." (Id., p. 91:3-5); (9) That Shekhter would say "AEW is making me put more money in, but it was always the same response: 'doesn't matter. I got the buyout option, so everything is going to be

DECLARATION OF STEVEN ZELIG IN SUPPORT OF SPECIAL MOTION TO STRIKE THE COMPLAINT BY DEFENDANTS STEVEN ZELIG AND BRENTWOOD LEGAL SERVICES, LLP PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 - 4

okay.'" (Id. p. 91:9-15); (10) Zimbler confirmed that AEW promised NMS the buy-out right and that AEW had engaged in fraud (Ex. 35 at 26:15-27:16); (11) That Zimbler "was upset with AEW about (things) they did to (Shekhter)" (Id., p. 84:2-91:12)

10. This testimony of Mr. Zimbler was significant because it supported NMS's claims that it had a buy-out right from AEW and that AEW knew that NMS was relying on the right to buy AEW out.

11. Bear in mind that Mr. Shekhter had stressed to Mr. Zimbler and Mr. Samek, that if his family business was going to go into partnership with AEW, that the partner had to have been beyond reproach from an ethics and honesty perspective. (Ex. 49, at ¶¶ 13, 16, 22) Hence, the Friedman letter and the following testimony of Zimbler was very significant because it corroborated that AEW was dishonest and not to be trusted. More specifically, Zimbler testified (1) That AEW had made a deal to give him 5% interest in AEW's share in the joint venture and all related transactions (Ex. 44 and Ex. 35, pp. 82:5-84:1); (2) That AEW had reneged on the agreement (Ex. 44 and Ex. 35, pp. 82:5-84:1); (3) That AEW's lawyers had drafted a written agreement that did not represent the agreement of Zimbler and AEW, and which according to Zimbler "had ridiculous language in it – that was circular" (Id., p. 82:17-21); (4) That the dispute was "not resolved in a manner consistent with what (Zimbler) understood the deal to be" (Id., p. 83:11-22); (5) That "Samek had told (Zimbler) things and Samek didn't come through on his promises" (Id., p. 83:23-84:1); (6) That AEW "crammed down … terms and language that was so difficult and so trying" (Id., p. 86:23-87:2); (6) That AEW then sent Zimbler "the legal bill for beating him up" (Id., p. 87:1-2).

DECLARATION OF STEVEN ZELIG IN SUPPORT OF SPECIAL MOTION TO STRIKE THE COMPLAINT BY DEFENDANTS STEVEN ZELIG AND BRENTWOOD LEGAL SERVICES, LLP PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 - 5

12. I viewed this evidence as substantial corroboration of AEW's wrongdoing.

13. On December 11, 2014, in a related matter, I issued subpoenas for the depositions of two individuals affiliated with AEW, i.e., Daniel Lennon and Jonathan Watson. Attached as Exhibit 51 is a true and correct copy of the deposition subpoena to Mr. Lennon; and attached as Exhibit 52 is a true and correct copy of the deposition subpoena to Mr. Watson.

14. The deposition of Lennon was set on January 16, 2015. On January 16, 2015 at 10:00 a.m., I was present in the Pircher & Nichols office located at 1925 Century Park East, Suite 1700, Los Angeles, California 90067. A court reporter was in attendance. I was prepared to take Mr. Lennon's deposition. I waited until approximately 10:30 a.m. Lennon did not appear at the deposition.

15. We were never babble to take Watson's deposition.

16. In January of 2015, in another action, I attempted to take the depositions of Samek. Gibson Dunn (GD) filed a motion for protective order as to the deposition, and scheduled the motion – 6 months later -- in June of 2015. AEW/GD clearly obstructed my legitimate efforts to obtain discovery. Attached as Exhibit 53 is a true and correct copy of "Eric Samek's Notice of Motion and Motion for Protective Order Regarding Subpoena for Oral Deposition."

17. In April 2015, in the *Lincoln* Action, I named AEW, Samek and others in the First Amended Complaint (FAC). Among other causes of action, the FAC included causes of action for fraud, breach of contract, and for fraud per Penal Code Section 484 and a recently published case, *Bell v. Feibush*, 212 Cal.App.4th 1041 (2013), as a result of AEW's procurement of the four properties under false pretenses. I took the position that AEW had engaged in fraud, that all

DECLARATION OF STEVEN ZELIG IN SUPPORT OF SPECIAL MOTION TO STRIKE THE COMPLAINT BY DEFENDANTS STEVEN ZELIG AND BRENTWOOD LEGAL SERVICES, LLP PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 - 6

versions of the JVA were the product of fraud, that it was up to the trier of fact to decide which version, if any, controlled, but that if any version controlled it was Version 2. I named as plaintiffs the NMS affiliates who had transferred the 4 properties, and as Defendants the AEW-affiliated-transferors. The FAC requested that the JVA be rescinded and canceled and that the transfers of the properties be reversed. I literally spent hundreds of hours evaluating the evidence and drafting the FAC.

18. In 2015, I associated James Goldman (now of Miller Barondess) and John Genga to assist me in the case against AEW. I was concerned that business law was and is not my forte and that Gibson Dunn was going to overwhelm me with an army of lawyers, including Mr. Fogelman, who was very aggressive. My concern was well founded.

19. In June of 2015, P6 filed an action entitled *P6 LA MF Holdings I, LLC v. NMS Properties, Inc.* LASC Case No. BC584878 (the "*P6* Action"). In the P6 Action, AEW sought an injunction against NMS Properties, an affiliate of NMS Capital. NMS Properties was the property manager for the properties owned by the JV, and presented a declaration from Marc Davidson who was an officer at AEW. AEW sought a temporary restraining order that would have removed NMS Properties as property manager. Judge Luis Lavin **denied** the request, finding:

> "The Court finds that (AEW's) recent admission that they did not have copies of all 8 property management agreements undermines (AEW/Davidson's) credibility. … At best, **Davidson's failure to mention these crucial facts in his original declaration shows that his ability to recollect important events is faulty or that there is no foundation for many of the statements in his declaration. At worst, Davidson's failure to inform the Court that he had not reviewed all eight Property**

DECLARATION OF STEVEN ZELIG IN SUPPORT OF SPECIAL MOTION TO STRIKE THE COMPLAINT BY DEFENDANTS STEVEN ZELIG AND BRENTWOOD LEGAL SERVICES, LLP PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 - 7

**Management Agreements before declaring that they contained the "identical" termination provision was deceptive.** ...." (Ex. 50)

Attached hereto and marked as Exhibit 50 is a true and correct copy of Judge Lavin's ruling.

20. AEW/Davidson's deception caused me concern, and corroborated an ever-growing body of evidence that AEW was dishonest, and had no ethics and was out to cheat NMS.

21. I was in jury trial in a hard fought medical malpractice/elder abuse case from March 18, 2019 to April 16, 2019. I had very little time to put together the anti-SLAPP motion which I filed on behalf of WLA Legal Services, Inc. on April 19, 2019. In working up the present motion, I noted a mistake in the memorandum to the WLA motion wherein I stated that I was not of record in the *P6* Action. In fact, I was of record. I apologize to the court and to counsel for the mistake.

22. In July of 2015, I noticed the depositions of AEW employees, i.e., Jonathan Watson, David Chun, Marc Davidson, Allison Corter, and Jean Caldwell. Attached as Exhibit 54 are true and correct copies of Notices of Depositions of Jonathan Watson, David Chun, Marc Davidson, Allison Corter, and Jean Caldwell. AEW **refused** to produce these witnesses for deposition and filed a motion for protective order.

23. AEW filed a demurrer to the FAC. Judge Bruguera granted, but gave leave to amend.

24. In September of 2015, in the *Lincoln* Action, I filed a Second Amended Complaint (SAC). The SAC was lengthy, extending over 278 pages and including multiple causes of action against AEW. Among other things, I alleged

that AEW had engaged in fraud, that all versions of the JVA were the product of fraud, that it was up to the trier of fact to decide which version, if any, controlled, but that if any version controlled, it was Version 2. I named as plaintiffs the NMS affiliates who had transferred the 4 properties, and as Defendants the AEW-affiliated-transferors. I requested that the JVA be rescinded and canceled and that the transfers of the properties be **reversed**. I literally spent hundreds of hours evaluating the evidence and drafting the SAC.

25. On September 21, 2015, after months of trying, NMS finally got to take the deposition of Samek, in which important testimony was obtained corroborating a key exhibit, supporting NMS's position. In deposition, the following occurred:

> MR. ZELIG: I'm going to go to Exhibit 41, a letter dated September 14, 2010. (Exhibit 41 marked.)
> A. Okay.
> BY MR. ZELIG:
> Q. Is that your signature, sir?
> A. I believe that is my electronic signature, yes."

(Attached hereto and marked as Exhibit 45 is a true and correct copy of pertinent pages of the deposition of Mr. Samek.)

26. Initially, Samek did not dispute the authenticity of the Cover Letter, but waited 28-minutes (and after a "break" with his counsel) before disputing its authenticity.

27. In November 2015, Skip Miller became lead counsel for NMS. I and WLA remained counsel of record, but was relegated to virtually no role. While I may have formally appeared with members of the Miller firm on a few occasions, to the best of my recall, I can recall only one instance after Miller became lead counsel where I actually addressed the Court.

28. On November 10, 2015, an ex-employee of AEW (whose supervisor was Samek) provided an important declaration corroborating AEW's fraud and breach of contract. (Attached as Exhibit 43 is a true and correct copy of that declaration.) More specifically, Daniel Lennon worked with Samek at AEW in August of 2010 – before NMS and AEW entered into the joint venture agreement. In fact, Samek was his "supervisor." In a declaration dated "10 Nov 2015", which was partially typed and partially hand-written by Lennon, he stated under penalty of perjury that Samek had repeatedly told him that NMS had been given the right to monetize AEW within 5 years of the anniversary of the formation of the joint venture at 1.75x or 24%, whichever was greater. Samek also told Lennon that he thought NMS "*did not know what they were really signing*," and:

> "*At least on one occasion I heard Eric Samek say that NMS believed they had the option to buy AEW out @ pre negotiated terms but that NMS was not aware of the terms in the agreement they were signing because NMS legal was not aware the terms in the JV agreement were different than the negotiated terms of the deal.*"

29. This data was important because it corroborated that NMS did in fact have the right to buy-out AEW, and that AEW clearly was attempting to defraud NMS.

30. On January 16, 2016, Lennon signed a more formal declaration, further corroborating my sincere belief that AEW had defrauded NMS and had breached contractual obligations. (See Exhibit 14) This declaration of Lennon further corroborated my sincere belief that AEW had defrauded NMS and had breached contractual obligations:

> "7. During my time at AEW, I worked directly for Eric Samek…I worked closely with Mr. Samek on the deals he was involved in.
>
> 8. The majority of the transactions I underwrote while at AEW were investments made in AEW's joint venture with NMS Properties ("NMS")

DECLARATION OF STEVEN ZELIG IN SUPPORT OF SPECIAL MOTION TO STRIKE THE COMPLAINT BY DEFENDANTS STEVEN ZELIG AND BRENTWOOD LEGAL SERVICES, LLP PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 - 10

owned by Neil Shekhter. I worked with Mr. Samek, who was the senior AEW partner involved in closing the NMS transaction. In the ordinary course of business, I received letters, emails, correspondence, memoranda, budgets and documents relating to the AEW-NMS joint venture.

9. For instance, I was recently shown a September 14, 2010 letter on which I was copied, a true and correct copy of which is attached as Exhibit A,. I have no reason to believe that I did not receive the letter at that time in the normal course of business. I was also copied on an email from an AEW employee, Jonathan Watson, dated September 14, 2010, …. I was recently shown this email and believe I received it in the ordinary course of business.

10. During my discussions with Mr. Samek about AEW's joint venture with NMS, Mr. Samek told me that NMS believed the deal between NMS and AEW was that NMS had the right to monetize or take-out AEW's interest in the joint venture by paying AEW 1.75 times its invested capital, or 24% per year on its investment, whichever was greater. Mr. Samek told me that this was how he and Mr. Shekhter of NMS negotiated the deal.

11. All of the underwriting I did for AEW on the transaction with NMS and AEW's decision to enter into the joint venture was based on NMS having the right to monetize or take-out AEW's interest in the joint venture by paying AEW 1.75 times its invested capital, or a 24% per year on its investment, whichever was greater." (Exhibit 14)

31. In my opinion, the statements set forth immediately above clearly supported suit against AEW.

32. On November 22, 2016, Judge Bruguera signed AEW's proposed order, but **rejected** any findings or sanctions against all of the defendant-lawyers, including WLA and me. AEW did not seek reconsideration, and did not appeal the denial of the request for sanctions against defendants herein, including me.

33. I audited, but did not address the court at the 8-day hearing. I heard the testimony of the experts. With respect to the alleged forgery and spoliation, the expert testimony was in substantial conflict. NMS's four experts opined that the

DECLARATION OF STEVEN ZELIG IN SUPPORT OF SPECIAL MOTION TO STRIKE THE COMPLAINT BY DEFENDANTS STEVEN ZELIG AND BRENTWOOD LEGAL SERVICES, LLP PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 - 11

findings of AEW's experts were incorrect and unsupported by the evidence. (See Exhibits 16-19)

33.1   To my knowledge, AEW did not subpoena any NMS witness to appear at the hearing, nor did it subpoena me or anyone at WLA.

34.    I had no involvement or knowledge whatsoever of the alleged spoliation, the alleged alteration of documents, the alleged forgeries, and the alleged destruction of evidence, or any other alleged wrongdoing relative to evidence. I had no knowledge or involvement in any of the creation or changes to documents that AEW claims to be forged, or any alleged destruction of evidence or any wrongdoing alleged by AEW.

35.    As I read the complaint, AEW alleges that I did not have probable cause to plead that Article 6 of the JVA provided NMS with a buy-out right, as set forth in the FAC, SAC and TAC. To the contrary, my pursuit of AEW was supported by, among other things, a reasonable reading of the JVA, the Term Sheet (Ex. 5), the mozel tov email (Ex. 2, pp. 33), Zimbler's deposition testimony (Ex. 35 – discussed above), Friedman's letter to AEW (Ex. 44), 2015 Declaration of Lennon (Ex. 43), and, 2016 Declaration of Lennon (Ex. 14).

36.    In my opinion, to construe Article 6 to mean that, even after AEW had been paid its full distribution under the seventh stage of the waterfall, and regardless of whether it was paid by NMS or paid via distributions declared by AEW, AEW would remain as a member, would have been contrary: (1) to the economic and practical operation of the JV; and, (2) to the points negotiated by the parties, as confirmed in various documents. In short, in my opinion, it was reasonable to construe Article 6 to provide that upon completion of the final stage of the waterfall, AEW's interest in the JV would be bought out by NMS.

DECLARATION OF STEVEN ZELIG IN SUPPORT OF SPECIAL MOTION TO STRIKE THE COMPLAINT BY DEFENDANTS STEVEN ZELIG AND BRENTWOOD LEGAL SERVICES, LLP PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 - 12

37. Up until the issues in this case, I had never heard of AEW. I harbored no legal ill-will against them, but I was concerned that AEW defrauded and cheated my clients. Even if I had legal ill-will against AEW, that would not have motivated me to file suit against them unless I felt there was a legitimate substantive basis to pursue a lawsuit which was the case herein.

38. Relative to meet and confer efforts: I sent an email to GD on Monday, April 22, 2019. I did not hear back from them until Wednesday, April 24, 2019 at around midday. I then called them and left a message. A couple of hours later, Mr. Srinivasan and Mr. Fogelman returned my call and we spoke for about 10-minutes. The "meet and confer" seemed more to me like an inquisition than an actual substantive discussion. GD confirmed that they would not be withdrawing any claims, but they did say that they would review my concerns about the inclusion of Brentwood Legal Services.

I DECLARE UNDER THE PENALTY OF PERJURY and the laws of the State of California that the foregoing is true and correct and I could and would competently testify thereto if called upon to do so.

Dated this 26th day of April 2019 at Santa Monica, California.

Steven Zelig

DECLARATION OF STEVEN ZELIG IN SUPPORT OF SPECIAL MOTION TO STRIKE THE COMPLAINT BY DEFENDANTS STEVEN ZELIG AND BRENTWOOD LEGAL SERVICES, LLP PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 - 13

# CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2019, a copy of the foregoing DECLARATION OF STEVEN ZELIG was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM//ECF System.

DATED: April 26, 2019

WLA LEGAL SERVICES, INC.

/s/

STEVEN ZELIG
Attorneys for Defendants Steven Zelig, WLA Legal Services, Inc., and Brentwood Legal Services, LLP, erroneously sued and served as Brentwood Legal Services

DECLARATION OF STEVEN ZELIG IN SUPPORT OF SPECIAL MOTION TO STRIKE THE COMPLAINT BY DEFENDANTS STEVEN ZELIG AND BRENTWOOD LEGAL SERVICES, LLP PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 - 14