1  Stephen J. Tully, SBN 112390
   stully@garrett-tully.com
2  Robert Garrett, SBN 65886
   rgarrett@garrett-tully.com
3  Efren A. Compeán, SBN 119658
   ecompean@garrett-tully.com
4  GARRETT & TULLY, P.C.
   225 S. Lake Ave., Suite 1400
5  Pasadena, California 91101-4869
   Telephone: (626) 577-9500
6  Facsimile: (626) 577-0813

7  Attorneys for Miller Barondess, LLP,
   Louis R. Miller, James Goldman,
8  Alexander Frid, and Jason Tokoro

9              UNITED STATES DISTRICT COURT

10    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12  P6 LA MF Holdings SPE, LLC, a          Case No. 2:19-cv-01150-AB-AFMx
    limited liability company,
13                                          (Hon. André Birotte, Jr.)
              Plaintiff,
14                                          REPLY BRIEF IN SUPPORT OF
         vs.                                SPECIAL MOTION TO STRIKE
15                                          COMPLAINT PURSUANT TO
    NMS CAPITAL PARTNERS I, LLC;            CALIFORNIA CODE OF CIVIL
16  BRENTWOOD LEGAL SERVICES;               PROCEDURE § 425.16
    STEVEN ZELIG; GENGA &
17  ASSOCIATES, P.C.; WLA LEGAL
    SERVICES, INC.; JOHN GENGA;             Date:   May 24, 2019
18  MILLER BARONDESS LLP; LOUIS             Time:   10:00 A.M.
    R. MILLER, JAMES GOLDMAN;               Crtrm.: 7B
19  ALEXANDER FRID; JASON
    TOKORO; AND DOES 1-10, inclusive,
20
              Defendants.
21

22

23

24

25

26

27

28

*GARRETT & TULLY*
A PROFESSIONAL CORPORATION

338041.DOCX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GARRETT & TULLY
A PROFESSIONAL CORPORATION

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      PRELIMINARY STATEMENT ........................................................ 6

II.     AEW MISSTATES ITS BURDEN OF PROOF ........................... 8

III.    AEW'S EFFORTS TO IMPUTE NMS'S CONDUCT TO THE MILLER FIRM ARE INSUFFICIENT TO MEET ITS BURDEN ................ 9

IV.     THE *LINCOLN* ACTION WAS NOT DEPENDENT ON AN ALLEGED FORGERY ..................................................... 10

V.      AEW DOES NOT DISPUTE THE LAW AND EVIDENCE THAT THE MILLER FIRM HAD PROBABLE CAUSE ......................... 11

VI.     THE INTERIM ADVERSE JUDGMENT RULE APPLIES ..................... 14

VII.    AEW HAS FAILED TO MEET ITS BURDEN TO ESTABLISH THAT THE MILLER FIRM ACTED WITH MALICE ................................. 16

VIII.   AEW'S REQUEST FOR DISCOVERY IS IMPROPER .............................. 19

338041.DOCX
REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Arcaro v. Silva & Silva Enters. Corp.*,
  77 Cal. App. 4th 152 (1999)...................................................................11, 12

*Bertero v. Nat'l Gen. Corp.*,
  13 Cal. 3d 43, 52 (1974)........................................................................12, 15

*Bituminous Constr., Inc. v. Rucker Enters., Inc.*,
  816 F.2d 965 (4th Cir. 1987)........................................................................14

*City & County of San Francisco v. Superior Court*,
  37 Cal. 2d 227, 235 (1951)............................................................................19

*Commonwealth Aluminum Corp. v. Stanley Metal Ass'n*,
  186 F. Supp. 2d 770 (W.D. Ky. 2001) ........................................................14

*Cowles v. Carter*,
  115 Cal. App. 3d 350, 355-59 (1981) ........................................................14

*Crowley v. Katleman*,
  8 Cal. 4th 666 (1994)...............................................................................14, 15

*Daniels v. Robbins*,
  182 Cal. App. 4th 204, 224 (2010).....................................................6, 16, 19

*Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*,
  515 F. 3d 1019, 1038 n. 23 (9th Cir. 2008)..................................................18

*Hufstedler, Kaus & Ettinger v. Superior Court*,
  42 Cal. App. 4th 55, 66 (1996).......................................................................9

*In Re Splash Tech. Holdings, Inc. Sec. Litig.*,
  160 F. Supp. 2d 1059, 1071 n. 7 (N.D. Cal. 2001) ......................................11

*Jenkins v. Pope*,
  217 Cal. App. 3d 1292, 1301 (1990)............................................................11

*Johnson v. Couturier*,
  261 F.R.D. 188, 193 (E.D. Cal. 2009)..........................................................20

*Leonardini v. Shell Oil Co.*,
  216 Cal. App. 3d 547, 571 (1989)..................................................................9

*Mangano v. Verity, Inc.*,
  179 Cal. App. 4th 217, 223 (2009)...............................................................14

*Masterson v. Pig'n Whistle Corp.*,
  161 Cal. App. 2d 323 (1958)........................................................................13

GARRETT & TULLY
A PROFESSIONAL CORPORATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3                                    Case No. 2:19-cv-01150-AB-AFMx

**GARRETT & TULLY**
A PROFESSIONAL CORPORATION

*Morrison v. Rudolf,*
    103 Cal. App. 4th 506, 512-13 (2002) ............................................................9

*Nurseries, LLC v. Florist Mut. Ins., Inc.,*
    266 F. Supp. 2d 1253 (D.C. Co. 2003)..........................................................14

*Pasternack v. McCollough,*
    235 Cal. App. 4th 1347, 1357 (2015).............................................................20

*Pattiz v. Minye,*
    61 Cal. App. 4th 822, 828 (1998) ...................................................................6

*Paul for Council v. Hanyecz,*
    85 Cal. App. 4th 1356, 1364 n. 5 (2001) ........................................................9

*Plumley v. Mockett,*
    164 Cal. App. 4th 1031, 1052 (2008) ........................................................14, 19

*Reading Int'l, Inc. v. Malulani Grp., Ltd.,*
    40 F. Supp. 3d 1312 (D. Haw. 2014) ............................................................14

*Roberts v. L.A. Cty. Bar Ass'n,*
    105 Cal. App. 4th 604, 613-14 (2003) ...........................................................9

*Roberts v. Sentry Life Ins.,*
    76 Cal. App. 4th 375, 383 (1999) ............................................................8, 14

*Samara v. Matar,*
    5 Cal. 5th 322, 333 (2018) ...........................................................................13

*Sangster v. Paetkau,*
    68 Cal. App. 4th 151, 165 (1998) ...................................................................9

*Sheldon Appel Co. v. Albert & Oliker,*
    47 Cal. 3d 863, 885 (1989) .....................................................................7, 8, 9

*Silberg v. Anderson,*
    50 Cal. 3d 205, 211-212 (1990) ....................................................................18

*SuperGuide Corp v. Gemstar Dev. Corp.,*
    2010 WL 11463159 (C.D. Cal. June 3, 2010) ..............................................13

*Truestone, Inc. v. Simi West Indus. Park II,*
    163 Cal. App. 3d 715 (1984)..........................................................................14

*Uzyel v. Kadisha,*
    188 Cal. App. 4th 866, 927 (2010) ............................................................8, 9

*Wilson v. Parker, Covert & Chidester,*
    28 Cal. 4th 811 (2002)...................................................................................16

*Wright v. Ripley,*
    65 Cal. App. 4th 1189 (1998).....................................................................14, 15

Case No. 2:19-cv-01150-AB-AFMx
REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

338041.DOCX

1

2

*Zeavin v. Lee*,
    136 Cal. App. 3d 766, 772-73 (1982) ........................................................6, 10

3

4

## **STATUTES**

California Code of Civil Procedure § 128.5 ............................................................15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GARRETT & TULLY**
A PROFESSIONAL CORPORATION

Case No. 2:19-cv-01150-AB-AFMx
REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF
CIVIL PROCEDURE SECTION 425.16

338041.DOCX

# I.    <u>PRELIMINARY STATEMENT</u>

AEW's opposition does not dispute the law the Miller Firm relies upon, and AEW ignores the evidence the Miller Firm submits that conclusively demonstrates that AEW has utterly failed to meet its burden to prove that the Miller Firm lacked probable cause, and acted with malice. What AEW does do is misstate its burden of proof, misrepresent its own evidence, and remarkably admit that its purpose here is to invade the attorney-client privilege, which if allowed would eliminate the Miller Firm as an opponent of AEW in pending and on going litigation.

AEW's opposition is filled with conclusory accusations, and tries to impute NMS's alleged wrongdoing to the Miller Firm claiming, *without any evidence*, that the lawyers must have known about NMS's misconduct. That's contrary to the law. *Zeavin v. Lee*, 136 Cal. App. 3d 766, 772-73 (1982) (client's conduct cannot be imputed to the attorney in malicious prosecution action). Moreover, in *Daniels* and *Pattiz*, malicious prosecution claims against lawyers were dismissed where the underlying case, like here, was terminated for discovery abuse. *Daniels v. Robbins*, 182 Cal. App. 4th 204, 224 (2010) (affirming order granting anti-SLAPP motion); *Pattiz v. Minye*, 61 Cal. App. 4th 822, 828 (1998) (affirming order granting summary judgment). AEW ignores this authority which supports dismissal of the case.

AEW also ignores the substantial evidence of probable cause that the Miller Firm produced in support of its motion. Because it cannot overcome this evidence, AEW misstates its burden by arguing that the SLAPP motion should be denied because there are disputed "facts" that support its position that the Miller Firm did not have probable cause. That's not the law. AEW has the burden to show the "absence of any witnesses, documents, or other evidence in support of [the client's] allegations in the prior litigation . . . ." *Daniels*, 182 Cal. App. 4th at 224. It cannot come close in light of the evidence that the Miller Firm put forth before the Court. Nor can AEW overcome the high standard to pursue a malpractice claim –

<b>GARRETT & TULLY</b>
A PROFESSIONAL CORPORATION

that "any reasonable attorney" would agree that all of NMS's claims were "totally and completely without merit." *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 885 (1989). Instead of confronting the evidence establishing probable cause, AEW misstates and ignores the evidence. AEW's opposition argues that NMS's claims were based exclusively on the forgery, and that the Miller Firm should have dropped its client once the forgery was "uncovered," if not before, when AEW made the forgery allegations. Not so. Indeed, there is not a shred of evidence that the Miller Firm had anything to do with the alleged forgery. The TAC the Miller Firm filed asserted a claim based on Article 6.1 – the "take-out" right – which was the same in all versions of the JVA. The Miller Firm never asserted a claim based on the allegedly forged Buy/Sell right in Article 11.

The Miller Firm repeatedly sought a forensic examination to determine if there was a forgery – which AEW fought tooth and nail against. Third-party witnesses who worked for AEW like Daniel Lennon did not believe that Version 2 was a forgery. The experts that NMS retained all challenged AEW's conclusions that the JVA was a forgery; they also pointed out serious defects with AEW's testing methodology. Another judge – Judge Johnson – refused to accept AEW's forgery claims based on the same facts and same expert testimony. Indeed, because the expert testimony was so diametrically opposed, the Court of Appeal refused to affirm the trial court's holdings that there was a forgery. As such, because the evidence on the substantive issues in the case and on forgery was in conflict, probable cause existed as a matter of law.

In sum, AEW is suing lawyers for being lawyers. The standard is not to drop your client when the other side in a hotly contested lawsuit accuses your client of wrongdoing. Allowing malicious prosecution claims such as this will have a chilling effect on the legal profession making lawyers second-guess every decision they make out of fear they will get sued for simply doing their job.

That is not the law, and neither does the law sanction AEW's now openly-

**GARRETT & TULLY**
A PROFESSIONAL CORPORATION

338041.DOCX

professed objective here. Remarkably, AEW has admitted that its purpose is the use this case to "conduct discovery into communications with NMS [and the Miller Firm]" that will impinge on the attorney-client privilege, and be used to eliminate the Miller Firm as an opponent of AEW in pending and ongoing litigation between the parties. (Opp. at 9:11.) Malicious prosecution suits may not be so used to gain a litigation advantage by driving a stake into the attorney-client relationship. The law rejects AEW's claims and condemns its tactics. This Motion should be granted.

## II.    AEW MISSTATES ITS BURDEN OF PROOF

AEW contends that there is a "factual dispute" in the evidence of probable cause, and the existence of this dispute means that the SLAPP motion must be denied. (Opp. at 9.) Not only is this a misstatement of the burden AEW must meet, but it is an admission that probable cause existed here.

First, where there is a question of fact concerning the claims asserted in the underlying action, probable cause exists as a matter of law: in other words, the existence of that question means the claims were tenable. *Roberts v. Sentry Life Ins.*, 76 Cal. App. 4th 375, 383 (1999) (where there are issues of material fact, there is merit to the claim, which compels the conclusion there is probable cause). Thus, by admitting there is a factual dispute, AEW admits the claims asserted in the underlying action were arguably tenable, and therefore probable cause existed.

Second, probable cause is a low threshold for a defendant in a malicious prosecution case to meet, as it is designed to protect a litigant's right to assert arguable claims even if it is extremely unlikely that the litigant will prevail. *Uzyel v. Kadisha*, 188 Cal. App. 4th 866, 927 (2010); *Sheldon Appel*, 47 Cal. 3d at 885. As to attorneys like the Miller Firm, the probable cause standard is even more lenient: an attorney "is entitled to rely on information provided by the client [and] … 'may, without being guilty of malicious prosecution, vigorously pursue litigation in which he is unsure of whether his client or the client's adversary is truthful, so long as that issue is genuinely in doubt.'" *Morrison v. Rudolf,* 103 Cal. App. 4th 506, 512-13

REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

338041.DOCX

**GARRETT & TULLY**
A PROFESSIONAL CORPORATION

1    (2002).[1]

2        As a result of this low standard, and the policies underlying the conversely

3    heavy burden plaintiffs in a malicious prosecution case must satisfy to prove a lack

4    of probable cause, the court "must construe the allegations of the underlying

5    complaint liberally in *a light most favorable to the malicious prosecution*

6    *defendant*." *Sangster v. Paetkau,* 68 Cal. App. 4th 151, 165 (1998) (emphasis

7    added); *Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547, 571 (1989).

8        Therefore, completely contrary to AEW's characterization of the burden here,

9    the "factual dispute" it identifies must under the law be construed in favor of the

10    Miller Firm and its probable cause to pursue the claims in the *Lincoln* Action.

11        AEW again misstates its burden by claiming that the Miller Firm must have

12    "expected a verdict in favor of NMS" in the *Lincoln* Action in order to have had

13    probable cause. (Opp. at 19.) Not so: probable exists even if the attorney believes it

14    is "extremely unlikely" he or she will win. *Sheldon Appel*, 885; *Uzyel*, 927.

15        Finally, AEW repeatedly cites "evidence," "details," and "facts" alleged in its

16    complaint, and contends that the Miller Firm somehow has the burden to disprove

17    them. (Opp. at 8, 9, 9 n.3, 16, 23.) False: AEW has the burden to prove probable

18    cause, and it cannot rely on its complaint to satisfy that burden. *Paul for Council v.*

19    *Hanyecz*, 85 Cal. App. 4th 1356, 1364 n.5 (2001).

20    **III.    AEW'S EFFORTS TO IMPUTE NMS'S CONDUCT TO THE MILLER**

21           **FIRM ARE INSUFFICIENT TO MEET ITS BURDEN**

22        It was AEW's burden to put forth "competent, admissible evidence" that the

23    Miller Firm lacked probable cause and acted with malice in representing its client in

24    the *Lincoln* Action. *Roberts v. L.A. Cty. Bar Ass'n*, 105 Cal. App. 4th 604, 613-14

25    (2003). Despite the fact that AEW and its lawyers had unfettered access to all of

GARRETT & TULLY
A PROFESSIONAL CORPORATION

26

27    [1] Contrary to AEW's assertions regarding the Miller Firm's "investigation," the Supreme Court has held that an attorney's "investigation [is] legally irrelevant to the

28    determination of probable cause." *Hufstedler, Kaus & Ettinger v. Superior Court*, 42 Cal. App. 4th 55, 66 (1996); *Shelon Appel*, 47 Cal. 3d at 882-83.

1 NMS's files by virtue of its forensic examination, AEW's opposition does not
2 include any admissible and legitimate "evidence" of wrongdoing by the Miller Firm.
3 It merely relies on the same conclusory allegations in its Complaint – that because
4 NMS engaged in wrongdoing, its lawyers must have known. (Opp. at 7-9, 13, 16,
5 18-19, 22.) The established law – that AEW never disputes – forbids AEW's
6 attempt to satisfy its burden to prove a lack of probable cause or malice on the part
7 of the Miller Firm by imputing to the Miller Firm the knowledge or acts of its client.
8 *Zeavin*, 136 Cal. App. 3d at 772-73; *Pattiz*, 61 Cal. App. 4th at 828. Therefore,
9 AEW's efforts to conflate the Miller Firm attorneys with its client, and to attribute
10 the client's conduct to the Miller Firm, are patently wrong.

11 ## IV.   THE *LINCOLN* ACTION WAS NOT DEPENDENT ON AN ALLEGED
12 FORGERY

13        The lynchpin of AEW's opposition, and indeed its entire case, is that the
14 underlying *Lincoln* Action was dependent upon a forged contract – Version 2 of the
15 JVA. (Opp. at 23.) This is a misstatement. AEW never alleged that NMS forged an
16 agreement that did not exist before. Rather, it involved an alleged change to a
17 provision in a pre-existing contract. NMS's claims against AEW were *never*
18 dependent on that provision. From the beginning, the claims against AEW were
19 based on Article 6, which provisions were *the same in all versions of the JVA*. They
20 were not based on Article 11 as it appeared in Version 2.

21        As it previously argued on appeal in the *Lincoln* Action, AEW asserts that the
22 Miller Firm "completely change[d] [NMS's] theory" in the TAC filed in January
23 2016. Indeed, AEW goes so far as to label the Article 6 theory "nothing more than a
24 contrivance . . . ." (Opp. at 17.) This is simply false. The Court of Appeal in fact
25 rejected this same argument: "It is clear from the FAC to the TAC that appellants
26 consistently advocate they have a right to acquire AEW's interest within five years
27 by the payment of 1.75 times AEW's net capital investment *no matter which version
28 of the JVA is found to be legally operative*. While changing allegations as to which

10

Case No. 2:19-cv-01150-AB-AFMx
REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF
CIVIL PROCEDURE SECTION 425.16

338041.DOCX

version of the JVA controls is not ideal, it is a switch in legal theory that remains

based on the same general set of facts that are alleged *consistently in each*

*complaint*." (Court of Appeal Decision in B276726 at pp. 14-15 (Ex. 4 to Motion).)

Thus, far from some sort of "contrivance," NMS's claim that it had a take-out

or acquisition right based on Article 6 of the JVA was always at the core of the

*Lincoln* Action. What is a contrivance is AEW's misrepresentation that NMS's

"lawsuit was based on forgeries." (Opp. at 23.)

## V.     AEW DOES NOT DISPUTE THE LAW AND EVIDENCE THAT THE MILLER FIRM HAD PROBABLE CAUSE

Rather than confront the undisputed evidence put forth by the Miller Firm to

plead the breach of the take-out right in Article 6, AEW ignores it. (Motion at

pp. 21-29.) By doing so, AEW concedes that probable cause existed. *See, In Re*

*Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1071 n.7 (N.D. Cal.

2001).[2]

The primary case relied upon by AEW in asserting that the Miller Firm lacked

probable cause to pursue the *Lincoln* Action – *Arcaro v. Silva & Silva Enters. Corp.*,

77 Cal. App. 4th 152 (1999) – is inapposite. *Arcaro* involved an underlying suit by a

collection agency against a purported signer of a credit application. All the evidence

showed that the signature of the application was forged: the signer denied the

authenticity of his signature from the outset; provided the name of the person he

suspected of the forgery; provided a reasonable explanation of how the suspected

forger obtained his personal information; gave the agency ten samples of his

---

[2] AEW's claim that if any "one of the 31 causes of action" alleged in the *Lincoln* Action lacked probable cause – including the 24 the Miller Firm did not plead in the TAC – then the SLAPP must be denied. (Opp. at 9.) But AEW never disputes the law holding the opposite: that the Miller Firm has no malicious prosecution liability for the 24 causes of action that were dropped from the TAC. *Jenkins v. Pope*, 217 Cal. App. 3d 1292, 1301 (1990) ("To allow a malicious prosecution suit to be based on a cause of action dropped from an amended complaint would discourage amendment of pleadings to delete theories which come to appear untenable.").

personal signature that did not match the forgery; and the collection agency never had any extrinsic evidence of the genuineness of signature. *Id*. at 157. In short, the underlying case was *totally* dependent on the credit application, and *all* of the evidence showed that it was forged. Under those circumstances, the court held the collection agency lacked "probable cause" to maintain the action. *Id*. at 159.

The facts here are completely different from *Arcaro*. First, NMS's case did not depend on the alleged forgery: Article 11. Second, there was substantial evidence supporting the genuineness of Version 2 and other documents that AEW claims to have been forged. Former AEW employee Daniel Lennon testified that he believes he and AEW received the cover letter – which AEW contradictorily alleged in the *Lincoln* Action, and now again in its current complaint, was never received and is a forgery. (See, Lennon Decl. (Ex. 14) ¶ 9.) Mr. Lennon further testified he had no reason to believe that NMS forged anything. (*Id.* ¶¶ 9, 18.) At the evidentiary hearing, Lennon testified to the same effect, and confirmed that he had no reason to believe Version 2 of the JVA attached to the September 2010 cover letter was a forgery. (Transcript of October 25, 2016 hearing (Ex. 15), pp. 139-142, 150, 155.)[3] In opposing this motion, AEW has not addressed Mr. Lennon's testimony, nor any of the evidence showing the Miller Firm's probable cause to defend NMS against AEW's claims of forgeries and spoliation. (Motion at pp. 26-27.)[4]

Also, it is undisputed that the Miller Firm obtained and submitted to the court the testimony of four experts: Valery Aginsky, Kathleen Nicolaides, William Flynn and Scott Cooper. These experts opined that the opinions offered by AEW's experts

---

[3]AEW continues to contend that the Miller Firm is somehow liable for malicious prosecution because it did not call Shekhter at the October 2016 hearing. (Opp., pp. 18-19, 25.) Not only does AEW fail to address the law holding the Miller Firm's trial judgments cannot form the basis for liability (Motion, p. 12), but again AEW transposes the burden of proof. AEW brought the motion for sanctions, it had the burden of proof, and AEW could have called Shekhter if it wanted to. The Miller Firm had no obligation to call any particular witness.

[4]Nor does AEW dispute the law holding that the Miller Firm cannot be liable for "maliciously defending" NMS against those claims. *Bertero v. Nat'l Gen. Corp.*, 13 Cal. 3d 43, 52 (1974).

on the forgery and spoliation issues were incorrect, not supported by evidence, contrary to generally accepted methodology (and therefore inadmissible under the *Daubert* standard), inconsistent, and speculative. (Ex. 16, ¶¶ 18-26; Ex. 17, ¶¶ 13-14, 38, 40-41; Ex. 18, ¶¶ 19-20, 31, 37, 39, 43-44, 50-51, 54, 56, 59-60, 63-64; Ex. 19, ¶¶ 7-9, 12, 14, 16-21, 23-32, 41-44, 48, 52, 58-60, 65, 69.) NMS's experts went further: they refuted AEW's claims of forgery, testifying that based on the forensic evidence, there was no evidence that Version 2, the "cover letter," or the La Cienega PMA were forgeries. (*Id.*)[5]

Beyond the evidence disputing the forgery allegations, there was substantial evidence – which AEW also fails to contest or even address and thereby concedes – supporting the Article 6/take-out claim pursued by NMS. This includes (1) the economic and practical operation of the seventh waterfall in Article 6.1(b)(vii) of the JVA; (2) Lennon and Zimbler's testimony that AEW promised NMS that it would have a take-out right and that Article 6 was intended by AEW and NMS to implement that promise;[6] (3) Judge Johnson's denial of the injunction in the *P6* case based on his finding that AEW's interpretation of Article 6.1 was tenable;[7] (4) the

---

[5] Despite AEW's continuing mantra concerning the alleged forgery, the fact is that while AEW argued exactly this on the appeal of the *Lincoln* sanction order, the Court of Appeal declined to decide the issue, meaning the issue of forgery remains even today unresolved and open. *Samara v. Matar*, 5 Cal. 5th 322, 333 (2018).

[6] AEW relies on *Masterson v. Pig'n Whistle Corp.*, 161 Cal. App. 2d 323 (1958), and the unpublished *SuperGuide Corp v. Gemstar Dev. Corp.*, 2010 WL 11463159 (C.D. Cal. June 3, 2010), to contend that the interpretation of Article 6.1 alleged by the Miller Firm lacked probable cause. (Opp., p. 26.) Unlike here, in *Masterson* and *SuperGuide* there was no extrinsic evidence and no witnesses supporting the defendant's interpretation of the contract. *Masterson*, at 337-38; *SuperGuide*, at *8.

[7] AEW argues that the rulings of the *P6* court against it on the same claims AEW reasserts here should be ignored because they were made in a different case than *Lincoln*. (Opp., p. 27.) The Miller Firm is not arguing *res judicata* or collateral estoppel where issues of identity of parties or actions would be relevant. The point is that in denying AEW's motion for preliminary injunction, and for sanctions against the Miller Firm, Judge Johnson ruled there were triable issues with respect to the identical claims AEW alleges here: "forgery, false testimony and destruction of evidence," the Miller Firm's alleged knowledge and participation in that and the Article 6.1 take-out right. (Motion, pp. 25-26, 29.) A claim that persuaded a judge there were triable issues establishes probable cause. *Roberts, supra*, at 383.

13

Case No. 2:19-cv-01150-AB-AFMx
REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

338041.DOCX

Court of Appeal's finding in the Lincoln Action that the claim based on Article 6 was not a sham, as the trial court had decided; and (5) the fact that AEW made a proposal in March 2015 that NMS buy out AEW under the terms of Article 6.1. (Motion at pp. 21-25.)

AEW is wrong in its contention that the evidence of AEW's buy-out proposal is not admissible because it is a settlement proposal. (Opp. at 13.) Although evidence of settlement offers are not admissible to prove liability, it is admissible for other purposes, including an admission against interest, impeachment, intent and knowledge, a party's understanding of obligations under and the validity of agreements in dispute, and estoppel.[8] Here, the Miller Firm properly offered evidence of AEW's proposal that NMS buy it out not to prove AEW's liability, but rather to show that AEW understood that NMS had a buy-out right (under Section 6.1 of the JVA) and, therefore, the Miller Firm had probable cause to assert a claim to that effect.

## VI.    THE INTERIM ADVERSE JUDGMENT RULE APPLIES

In its moving papers, the Miller Firm argued that, under the adverse judgment rule, the denial of that motion means that the Miller Firm had probable cause to prosecute – or did not act with malice in prosecuting – the claims alleged by NMS in the *Lincoln* Action.[9] In its opposition, AEW relies on two cases – *Wright v. Ripley*, 65 Cal. App. 4th 1189 (1998), and *Crowley v. Katleman*, 8 Cal. 4th 666 (1994) – for the contention that an order denying monetary sanctions will not permit the

---

[8] *See Truestone, Inc. v. Simi West Indus. Park II*, 163 Cal. App. 3d 715 (1984); *Mangano v. Verity, Inc.*, 179 Cal. App. 4th 217, 223 (2009); *Sw. Nurseries, LLC v. Florist Mut. Ins., Inc.*, 266 F. Supp. 2d 1253 (D.C. Co. 2003); *Bituminous Constr., Inc. v. Rucker Enters., Inc.*, 816 F.2d 965 (4th Cir. 1987); *Reading Int'l, Inc. v. Malulani* Grp*., Ltd.*, 40 F. Supp. 3d 1312 (D. Haw. 2014); *Commonwealth Aluminum Corp. v. Stanley Metal Ass'n*, 186 F. Supp. 2d 770 (W.D. Ky. 2001).

[9] California courts have held that victory in an adversarial proceeding conclusively establishes probable cause. *Cowles v. Carter*, 115 Cal. App. 3d 350, 355-59 (1981) (conclusive presumption of probable cause where plaintiff wins on merits after fair adversary hearing, even if win later reversed on appeal); *see also, Roberts*, 76 Cal. App. 4th at 383 (same); *Plumley v. Mockett,* 164 Cal. App. 4th 1031, 1052 (2008) (same).

Case No. 2:19-cv-01150-AB-AFMx

REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

GARRETT & TULLY
A PROFESSIONAL CORPORATION

338041.DOCX

1  application of the interim adverse judgment rule. Neither case so holds, nor do they

2  involve the interim adverse judgment rule at all.

3      In *Crowley*, the Supreme Court merely rejected arguments that the enactment

4  of Code of Civil Procedure § 128.5 (authorizing the imposition of sanctions and

5  attorneys' fees for frivolous litigation) eliminated actions for malicious prosecution

6  or modified the *Bertero* rule that a malicious prosecution suit may be maintained

7  when only one of several claims in the underlying litigation lacked probable cause.

8  Application of the interim adverse judgment rule was never considered.

9      In *Wright*, the Court of Appeal considered whether the trial court's refusal to

10  award sanctions against the plaintiff in the underlying case, and specifically its

11  conclusion that no "bad faith" had been established, collaterally estopped the

12  defendant from proving, in a subsequent case for malicious prosecution, the malice

13  element. 65 Cal. App. 4th at 1193. It declined to find that collateral estoppel applied

14  to the denial of sanctions in the underlying case in light of the circumstances of that

15  case. *Wright* is distinguishable in two important respects.

16      First, while the decision to deny sanctions in the underlying case in *Wright*

17  was made following a summary proceeding (i.e., a motion decided without the

18  moving party having had a full and fair evidentiary hearing), in the *Lincoln* Action,

19  AEW (unlike NMS) had unfettered discovery and the right to offer any documentary

20  and testimonial evidence it wanted at an 8-day evidentiary hearing.[10]

21      Second, in *Wright*, the plaintiff in the malicious prosecution case – the

22  defendant in the underlying action – did not argue that a portion of the sanctions

23  order in the underlying action was binding but that another portion was not. AEW,

24  however, relies extensively on the findings and orders of the trial court in the

25  *Lincoln* Action. (*See* Opp. at 7, 9, 12, 16, 18-19.) AEW cannot have it both ways: it

26

27  _____
[10]NMS was denied the right to conduct discovery, including the right to depose the
experts on whom Judge Bruguera relied. It was also denied the right to provide
28  testimony from a key material witness. (Motion, p. 27.)

338041.DOCX

**GARRETT & TULLY**
A PROFESSIONAL CORPORATION

GARRETT & TULLY
A PROFESSIONAL CORPORATION

1  cannot rely, as it does, on one of Judge Bruguera's conclusions (that NMS engaged

2  in litigation-related misconduct that warranted sanctions) but reject another (that the

3  Miller Firm did not).[11]

4  **VII.   AEW HAS FAILED TO MEET ITS BURDEN TO ESTABLISH THAT**

5  **THE MILLER FIRM ACTED WITH MALICE**

6  Under the law, AEW cannot not impute to the Miller Firm the knowledge or

7  acts of its client to satisfy AEW's burden to prove malice on the part of the Miller

8  Firm. *Daniels,* 182 Cal. App. 4th at 221 ("Plaintiff did not plead facts showing

9  malice on the part of the attorney defendant merely by alleging the client failed to

10  cooperate with discovery obligations. Courts should not impute malice to attorneys

11  based on the client's misconduct.") AEW does not dispute this law, but rather

12  attempts to obfuscate its improper attempt to impute the misconduct of NMS to the

13  Miller Firm, and its speculation regarding malice, by misrepresenting its own

14  evidence. AEW's "evidence'" in fact proves that the "facts" that supposedly show

15  the Miller Firm's malice do not exist:

16  ▪ AEW claims that the declaration of the expert Rubin shows that "the typo story

17  is a lie" and the Miller Firm knew it. (Opp. at 11.) But the cited declaration says

18  nothing regarding the Miller Firm.[12]

19  ▪ AEW cites the Srinivasan declaration (¶ 5), which in turn relies on ¶ 52 of the

20  Rubin declaration and Ex. 1 to the complaint, regarding an allegedly "botched"

21  PMA being sent to NMS's lawyers. (Opp. at 12.) But ¶ 52 of the Rubin

22

23  [11]AEW cites *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811 (2002), for the

24  proposition that unless the *Lincoln* court articulated its reasons for denying sanctions against the Miller Firm, the interim adverse judgment rule does not apply. (Opp., p. 27 n. 9.) Untrue: *Wilson* involved a "summary judgment," not the kind of hearing

25  that AEW had to prove its case against the Miller Firm. (*Wilson*, at 824.) The *Wilson* court in fact held that a denial of summary judgment on the grounds a triable issue

26  exists establishes probable cause to defeat a subsequent malicious prosecution action. (*Id.*) Judge Johnson's findings of triable issues of fact and no sanctions thus

27  establish that the Miller Firm had probable cause. (Motion, p. 29; Ex. 21 thereto.)

28  [12]The declaration also fails to mention, much less rebut the opinions of NMS's experts contradicting Mr. Rubin's findings. (See, Motion, pp. 26-27.)

1    declaration says nothing regarding NMS's lawyers. Ex. 1 to the complaint is the

2    November 22, 2016 order granting sanctions – this actually shows that Judge

3    Bruguera considered and rejected this argument of AEW against the Miller Firm.

4  ▪ AEW claims that an NMS attorney, Steven Zelig, "threatened" to cut a document

5    in half and, therefore, all of the NMS attorneys joined an effort to "suppress"

6    NMS's forgery. AEW cites, as support for this claim, Ex. 65, p. 2, an email from

7    Mr. Zelig. (Opp. at 15-16.) In truth, the email does not threaten anything, but

8    simply asks that AEW "agree" to Zelig's "proposal."

9  ▪ AEW claims that Mr. Frid's alleged presence at the forensic examination

10   somehow shows he knew of spoliation perpetrated by NMS, citing Ex. 89 and

11   ¶ 4 of the Srinavasan declaration. (Opp. at 16, 25.) The cited declaration merely

12   states that an unidentified colleague of Srinavasan was at the examination and so

13   was Mr. Frid. Neither the declaration nor the cited exhibit even hints that

14   Mr. Frid knew a thing about the evidence spoliation, or that somehow the mere

15   presence at the examination (by Mr. Frid, the "colleague" or AEW's experts) is

16   relevant to knowledge, let alone malice.

17 ▪ AEW claims that Jason Tokoro falsely stated that devices did not exist, which

18   made it harder for AEW to discover them, relying on Exs. 30-32, 35, 65. But

19   Exs. 30-32, 35 are just letters from Mr. Genga and Mr. Frid communicating what

20   plaintiffs – not the Miller Firm – identified regarding information to comply with

21   the court order. And Ex. 65, discussed above, is Mr. Zelig's email, which

22   Mr. Tokoro is not even copied on. None of these letters suggests the Miller Firm

23   made a false statement, much less a statement it knew to be false.

24 ▪ AEW claims the Miller Firm "concealed" from an expert NMS's claim that

25   Version 2 of the JVA was created in September 2010, citing Ex. 71, 13:12-23,

26   the examination of NMS expert Flynn at the evidentiary hearing. (Opp. at 29.)

27   AEW misrepresents his testimony. In truth, Flynn testified that the reason he

28   didn't know about NMS's claim had nothing to do with any "concealment" by

GARRETT & TULLY
A PROFESSIONAL CORPORATION

Case No. 2:19-cv-01150-AB-AFMx

REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF
CIVIL PROCEDURE SECTION 425.16

the Miller firm, but rather was the result of *his* choice to always keep a "firewall" between him and the claims in the case so as to not be influenced by them. All this shows is that the Miller Firm properly retained an expert to give the most honest opinions he could.

- AEW claims that NMS's lead attorney "confirmed" Version 3 of the JVA was genuine, citing Ex. 6, pp. 2, 75, an August 16, 2013 email from attorney Johnson with a JVA attached. (Opp. at 29.) In truth, Johnson admitted on page 2 of his email that no letter or correspondence exists to confirm NMS's approval of a change to the JVA by which pages were "substituted" without NMS's signature. Neither the attorney nor AEW explain why they were unilaterally adding provisions to the JVA without consent from NMS.

- AEW claims that letters sent to title companies and brokers is evidence of malice, citing Exs. 44, 46, 48-52, 54. Each of these 2016 letters specifically cite to NMS's buy-out right in Article 6.1 of the JVA. This is the same right that Judge Johnson recognized as a valid claim in the *P6* Action when he denied the injunction in June 2016 on the grounds that 6.1 called into question AEW's rights to take any action under the JVA. (Motion at pp. 25-26.) Thus, the Miller Firm had more than a good faith belief in the validity of its position because a judge of the Superior Court had validated it in real time.[13]

- AEW claims that by even raising the orders against it in the *P6* Action, the Miller firm is acting in bad faith because those orders were obtained by fraud. (Opp. at. 27-28.) Nonsense: AEW presented its claims of fraud, forgery, false testimony and destruction of evidence to the *P6* court and lost. (Motion at p. 29.)

---

[13] AEW also generally refers to what it labels "copycat lawsuits." (Opp., pp. 20, 22, 29.) There is "no legal authority from a California court for (the) assertion that a decision to file numerous claims is probative of malice." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.,* 515 F. 3d 1019, 1038 n.23 (9th Cir. 2008). Moreover, AEW has not sued for malicious prosecution of those lawsuits, and therefore the litigation privilege applies to them. *Silberg v. Anderson*, 50 Cal. 3d 205, 211-212 (1990).

GARRETT & TULLY
A PROFESSIONAL CORPORATION

Case No. 2:19-cv-01150-AB-AFMx

REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

338041.DOCX

As a matter of law, where claims of fraud or perjury are litigated and rejected by a fact finder in an underlying case, those same claims cannot be relied on to support a subsequent malicious prosecution suit. *Plumley,* at 1031.

- AEW's assertion that Skip Miller said he would not stop suing AEW (Opp. at 21, 29) is not supported by any admissible evidence. The cited Samek declaration, ¶ 11, says that at a July 14, 2015 meeting, Key Bank's counsel Santoro told Samek that he thought the message Mr. Miller wanted to send "appeared" to be that "we will never stop suing AEW" until they cave. This is double hearsay involving the speculation of a third party that is not admissible for any purpose.

*Daniels* is dispositive of AEW's failure to meet its burden of proof on the malice element. There, the court held that while the evidence supported malice by the client, it did not as to the attorneys. The attorney defendants submitted declarations denying that they pursued the underlying action with malice. 182 Cal. App. 4th at 225. The court held that while the record indicated a lack of probable cause and negligence on the part of the attorneys in conducting factual investigation, these facts were insufficient to show malice. *Id.* In sum, the *Daniels* court held that "the absence of any *affirmative evidence* of malice on the part of the attorneys precludes a successful malicious prosecution action against them." *Id.* at 227 n.7.

Likewise here, AEW offers anything but the "affirmative evidence of malice." Rather, it relies on improper imputation, misrepresented evidence, and speculation, and thus has failed to meet its burden on the "malice" element. (*See* Motion at pp. 32-33.)

## VIII.  AEW'S REQUEST FOR DISCOVERY IS IMPROPER

AEW admits that its objective in this case is to conduct discovery that will invade the attorney-client relationship and privilege[14] between the Miller Firm and

---

[14]The attorney-client privilege has been a hallmark of Anglo–American jurisprudence for almost 400 years. *City & County of San Francisco v. Superior Court*, 37 Cal. 2d 227, 235 (1951).

GARRETT & TULLY
A PROFESSIONAL CORPORATION

338041.DOCX

1  NMS and its affiliates in ongoing litigation – before any adjudication that the Miller

2  Firm has any liability. The courts condemn such tactics as motivated to gain an

3  unfair advantage and manifestly unjust.

4     "If this occurs, it means the malicious prosecution plaintiff has obtained an

5  unfair advantage over the opposing party – even if the malicious prosecution claim

6  lacks merit. There is no good purpose to be served in allowing a malicious

7  prosecution plaintiff to obtain such an advantage over an opposing party and its

8  counsel." *Pasternack v. McCollough,* 235 Cal. App. 4th 1347, 1357 (2015). "Once

9  counsel would be deposed as to facts, the assertion that the attorney was an

10  important witness for the defense would soon be forthcoming. Then, disqualification

11  of a subpoenaed testifying attorney is nearly mandatory. To disrupt the client

12  relationship between plaintiff and his lead attorney, and to start from scratch at this

13  point, would create a manifest injustice." *Johnson v. Couturier,* 261 F.R.D. 188, 193

14  (E.D. Cal. 2009).

15     To allow AEW to use discovery to invade the attorney-client relationship

16  would be to deny the Miller Firm its due process right to be heard and present a

17  defense, as this would effectively pre-judge the Firm's liability for malicious

18  prosecution without a trial, and inflict irreparable damage on the Firm and its client,

19  irrespective of the final outcome of this matter. The Court should see through this

20  ploy, deny discovery and grant the Miller Firm's SLAPP motion.

21

22  DATED: May 10, 2019          GARRETT & TULLY, P.C.

23

24

25                                STEPHEN J. TULLY
                                  Attorneys for Miller Barondess, LLP, Louis R.
26                                Miller, James Goldman, Alexander Frid, and
                                  Jason Tokoro
27

28

GARRETT & TULLY
A PROFESSIONAL CORPORATION

338041.DOCX      REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF
                 CIVIL PROCEDURE SECTION 425.16

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF VENTURA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Ventura, State of California. My business address is 4165 E. Thousand Oaks Blvd., Suite 201, Westlake Village, CA 91362-3839.

On May 10, 2019, I served true copies of the following document(s) described as **REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16** on the interested parties in this action.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 10, 2019, at Westlake Village, California.

Rusty Holmgren

GARRETT & TULLY
A PROFESSIONAL CORPORATION

Case No. 2:19-cv-01150-AB-AFMx

338041.DOCX

REPLY BRIEF IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16