JOHN M. GENGA (SB# 125522)
jgenga@gengalaw.com
GENGA & ASSOCIATES, P.C.
16000 Ventura Boulevard, Suite 1205
Encino, CA 91436
Telephone: (818) 444 4580
Facsimile: (818) 444 4585

Attorneys for Defendants
GENGA & ASSOCIATES, P.C.
and JOHN GENGA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| P6 LA MF Holdings SPE, LLC, a limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> NMS CAPITAL PARTNERS I, LLC; BRENTWOOD LEGAL SERVICES; STEVEN ZELIG; GENGA & ASSOCIATES, P.C.; WLA LEGAL SERVICES, INC.; JOHN GENGA; MILLER BARONDESS LLP; LOUIS R. MILLER; JAMES GOLDMAN; ALEXANDER FRID; JASON TOKORO; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 2:19-cv-01150-AB-AFM <br><br> **GENGA DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR SPECIAL MOTION TO STRIKE COMPLAINT PER CAL. CODE CIV. PROC. § 425.16** <br><br> *(Filed concurrently with Supplemental Declaration of John M. Genga in support and Notice of Joinder in Co-Defendants' Motions)* <br><br> DATE: May 24, 2019 <br> TIME: 10:00 a.m. <br> CTRM: 7B, First Street Courthouse <br> 350 West First Street <br> Los Angeles, CA 90012 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

By its opposition to their anti-SLAPP motion ("Motion"), AEW would have the Court keep Gengas as defendants herein even though their representation in the underlying Lincoln Studios Case ceased immediately after they had their clients provide the discovery upon which AEW did not obtain terminating sanctions until a year later.[1] For the Court to accept AEW's position would require it to determine that Gengas – at their own expense and before beginning to represent or protect the interests of NMS in litigation already in progress – should have done the work that AEW ultimately did in its own defense to get the Lincoln Studios Case dismissed.

The law of malicious prosecution does not go that far, particularly regarding the conduct of an *attorney* discharging his ethical obligation to represent his client vigorously. Rather, it requires AEW to show that "any reasonable attorney" would have found the Lincoln Studios Case "totally and completely without merit." The opposition makes no such showing; to the contrary, it completely ignores and fails to apply this governing legal standard.

The opposition also makes short shrift of the glaring difference between the limited role of Gengas and the much greater and longer involvement of the other attorney defendants as co-counsel in the underlying action. In one short paragraph, AEW states generically that the Lincoln Studio Case resolved in its favor. Again, the law requires more than this – namely, that the malicious prosecution defendant *pursue* the action *to* such legal termination. An *attorney* who does not do so, and who did not initiate the action, can have no liability.

Finally, while AEW *argues* malice on the part of the Genga Defendants in a footnote, it makes no *showing* of this essential element. The claim thus fails.

AEW's inability to defeat the Motion on the merits leads it to seek denial on non-substantive grounds. The Genga Defendants *did* meet and confer before filing

---

[1] Terms not otherwise defined herein have the meanings given them in the Motion.

-1-

their Motion, but AEW left them with no choice but to bring it. The Court should consider the Motion on its (substantial) merits. It should not allow discovery, as the statute itself does not permit it absent a motion AEW did not make and good cause it has not shown.

Most of all, the Court should consider the chill an action like this imposes on the role and duties of counsel. An attorney has the right to rely on information the client provides, and the obligation to act for and in the interest of the client. AEW would require counsel to disbelieve the client and subordinate its interest to those of the adversary. This Court should reject the danger of such an extreme position.

## II.   FACTS

The Genga Defendants' Motion stands out for the facts it does *not* have. For that reason, they have joined in their co-defendants' motions.

Gengas' lack of key facts highlights the principal and distinguishing basis for their Motion – namely, that they exited the Lincoln Studios Case long before it terminated in AEW's favor. Thus, for example, they did not know that the state court – twice, well after Gengas had ceased representing NMS there – had rebuffed AEW's efforts to have them and their co-counsel sanctioned on the same alleged here. Supp. Genga Dec. ¶ 3.[2]

The obligation to come forward with facts, though, rests with AEW, not the Genga Defendants. AEW has failed to adduce the facts needed to carry its burden to prove a "probability" of prevailing on its malicious prosecution claim.

## III.   ARGUMENT

AEW opposes the Motion with improper legal standards designed to mask the insufficiency of their pleading against the Genga Defendants. The correct tests require striking the Complaint against Gengas above all other defendants.

---

[2] "Supp. Genga Dec." distinguishes the Genga declaration supporting this reply from the "Genga Dec." accompanying the original Motion.

**A.     The Genga Defendants Have Validly Brought Their Motion.**

Gengas missed by a few minutes the filing of the Motion by midnight on April 12, 2019. However, the statute permits filing an anti-SLAPP motion "within 60 days of the service of the complaint …." Cal. Code Civ. Proc. § 425.16(f). The federal rules also allow challenging a pleading, as here, any time before one's own pleading. Fed. R. Civ. P. 12(b); *Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988; *Patel v. Contemporary Classics of Bev. Hills*, 259 F.3d 123, 126 (2d Cir. 2001). The Court should rule on the Motion as filed. *Id.* It gave AEW greater notice than the local rules provide, and caused no prejudice.

The Genga Defendants did meet and confer with AEW counsel before filing the Motion, although admittedly within less than the seven days set by Local Rule 7-3, and without so stating in their notice of motion. Supp. Genga Dec. ¶ 5. AEW refused to dismiss them as defendants, as the Motion seeks, and needed but a moment, and certainly not seven days, to take that steadfast position. *Id.* The tone of the opposition confirms this.

The Motion raises serious issues beyond those shared by all defendants, in whose motions the Genga Defendants join. Asking it to put substance over form, and meaning no disrespect to the extent they may have fallen short on the latter, the Genga Defendants urge the Court to consider and grant their Motion.

**B.     AEW Fails to Show Likely Success Against Gengas.**

AEW does not dispute that Gengas engaged in protected conduct acting for NMS in the Lincoln Studios Case, thus meeting the first part of the anti-SLAPP test, and shifting to AEW the burden to produce admissible evidence that would support judgment in its favor if accepted. Cal. Code Civ. Proc. § 425.16(a), (b)(1); *Kashian v. Harriman*, 98 Cal. App. 4th 892, 906 (2002); *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 897-98 (E.D. Cal. 2006). AEW tries to accomplish this in part by misstating the malicious prosecution elements, articulated by California's Supreme Court as follows:

> To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice.

*Bertero v. National General Corp.*, 13 Cal. 3d 43, 50 (1974) (citations omitted). The opposition establishes none of these elements.

### 1.   AEW does not demonstrate lack of probable cause.

AEW contends that the forgeries found by the Superior Court a year after Gengas left it made the Lincoln Studios Case not "legally tenable." Opp. Mem. 19-20. AEW omits, though, that "legally tenable," in malicious prosecution cases against *lawyers* – as opposed to the *parties* to whom they owe high professional and statutory duties – requires proof that "any reasonable attorney would agree" that the underlying action was "totally and completely without merit." *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 885 (1989), quoting *In re Marriage of Flaherty*, 31 Cal. 3d 637, 650 (1982). AEW does not and cannot show that any reasonable attorney necessarily would have so concluded during the limited time the Genga Defendants worked on the Lincoln Studios Case.

The opposition would have Gengas "detail how they reasonably believed" the Lincoln Studios Case had any merit. Opp. Mem. at 20:23-24. That's backward – the burden rests with AEW to prove that no reasonable attorney could have so believed. When the Genga Defendants served as co-counsel in Lincoln Studios, discovery had just begun and evidence concerning the operative agreement conflicted. The Motion identifies the September 2010 Cover Letter by which AEW itself appeared to have sent NMS the version of the agreement on which it then relied. Abundant additional evidence appears in co-defendants' motions

supporting that NMS had a "buyout" or "take out" right that it pursued in Lincoln Studios. *See*, *e.g.*, Miller Defts' Mtn., DE 42, at 21:8-26:8 and cited evidence.

"Probable cause is a low threshold designed to protect a litigant's right to assert arguable legal claims even if the claims are extremely unlikely to succeed," to avoid "the chilling of novel or debatable legal claims." *Uzyel v. Kadisha*, 188 Cal. App. 4th 866, 927 (2010); *Sheldon Appel*, 47 Cal. 3d at 885. To meet this threshold, a lawyer permissibly may "rely on information provided by the client;" the lawyer may not do so only when he or she "discovers" that such information is "false." *Daniels v. Robbins*, 182 Cal. App. 4th 204, 223 (2010), citing *Morrison v. Rudolph*, 103 Cal. App. 4th 506, 513 (2002), *Arcaro v. Silva & Silva Enterprises Corp.*, 77 Cal. App. 4th 152, 156-57 (1999).

That never came close to happening while the Genga Defendants served on the Lincoln Studios Case. The record shows it remained disputed to the end.

AEW contends, had the Genga Defendants "simply looked at NMS' devices and documents, … they would have known that 'Version 2' was created in July 2013 and that the (September 2010) Cover Letter was therefore a forgery because it referred to 'Version 2,' which did not exist as of the date of the letter …, [and] that Shekhter emailed himself a PDF copy of the Cover Letter on June 21, 2015 and that the PDF was created using a version of Adobe Acrobat that was not available until December 2014." Opp. Mem. at 23:14-21, citing the declaration of Samuel Rubin, its computer forensics expert. *Id.* at 23:21. AEW thus would require Gengas to *verify* probable cause as if they had such expertise themselves.

The law does not go so far. It requires only that an action not appear "totally and completely without merit" to a "reasonable *attorney*," not a computer science Ph.D. As AEW has not proved *that*, the Court should strike its Complaint.

## 2. Gengas did not pursue the Lincoln Studios Case to its termination in favor of AEW.

AEW cannot get past their own argument that what should have happened to avoid malicious prosecution liability *in fact did* as concerns the Genga Defendants. Whatever the circumstances of their termination in early December 2015, they got nowhere near seeing the Lincoln Studios Case through to AEW's judgment. The absence of this essential element disables AEW from proving any "probability" of prevailing on its malicious prosecution claim. *Bertero*, 13 Cal. 3d at 50; Cal. Code Civ. Proc. § 425.16(b)(1).

AEW argues that Gengas should have ceased representation once it should have realized the supposed forgery of a document on which NMS based its case. It fails to prove that did not happen. To the contrary, the evidence shows that it did. Their involvement in Lincoln Studios ended well before the forensic examination, for which they provided the information, apparently uncovered the claimed fraud.

The cases AEW cites hold counsel subject to malicious prosecution liability for "continuing to prosecute a lawsuit discovered to lack probable cause." *Zamos v. Stroud*, 32 Cal. 4th 958, 973 (2004). Once this happens, "a party … should not proceed without evidence sufficient to support a favorable judgment … or at least information affording an inference such evidence can be obtained." *Arcaro v. Silva & Silva Enterprises Corp.*, 77 Cal. App. 4th 152, 158-59 (1999).

Gengas followed precisely that process once told less than a month into their representation about AEW's forgery theory. Genga Dec. ¶ 5. They had evidence to the contrary – the September 2010 Cover Letter and other documents, *id.* ¶ 6 – but also produced all the documents and electronic media about which their client told them which could determine that issue. *Id.*¶¶ 7-8. Their services terminated immediately thereafter, *id.* ¶ 8, well before AEW's forensic examination yielded its results. Cmplt. ¶ 82. At that point, AEW alleges, "rather than withdrawing as

counsel, the NMS Counsel Defendants continued to represent NMS in its malicious prosecution of the *Lincoln Studios* Litigation ….." *Id.* ¶ 83.

All such defendants other than Gengas, that is. AEW dances on the head of a pin when it complains that counsel who ceased representation as required by its own authority did not do so soon enough. The specter of malicious prosecution to dissuade advancing "legally untenable" claims accomplishes no such purpose if it still punishes an attorney who in fact does not continue with such claims, whatever the reason. Precisely to encourage counsel to reject such claims, malicious prosecution cases will *not* find an attorney liable for the tort as to claims he or she no longer pursues. *See*, *e.g.*, *Jenkins v. Pope*, 217 Cal. App. 3d 1292, 1301 (1990). Striking the Complaint against Gengas similarly should follow here.

### 3. AEW provides no evidence of malice on Gengas' part.

AEW chides Gengas for purportedly not "challeng[ing] the existence of malice." Opp. Mem. at 19:21 n.7. If the original Genga Declaration did not make obvious that Gengas just tried to do their job and perform their duties to their client and harbored no ill will toward AEW, they so reaffirm by this reply. Supp. Genga Dec. ¶ 8. However, they have no obligation to disclaim malice; rather, AEW bears the burden to produce evidence that would support such a finding if believed.

The opposition nowhere does this. Rather, it contends merely that the lack of probable cause – a predicate that they fail to establish – will allow an inference of malice. Opp. Mem. at 19:21-23.

But the law requires more. "The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive." *Daniels*, 182 Cal. App. 4th at 224 (italics in original) (citation omitted). While lack of probable cause may permit inferring malice of a *party*, "the attorney is not the insurer of his client's conduct, and the law wisely places no such burden on that party's *attorney* solely by reason of his client's conduct …." *Id.* at 226, quoting *Zeavin v. Lee*, 136 Cal. App. 3d 766, 772 (1982) (italics in original). "A lack of probable cause … must be supplemented by

other, additional evidence." *HMS Capital, Inc. v. Lawyers Title Co.*, 118 Cal. App. 4th 204, 218 (2004). Absence of "legal tenability, … *without more*, would not logically or reasonably permit the inference that such lack of probable cause was accompanied by the actor's subjective malicious state of mind." *Downey Venture v. LMI Ins. Co.*, 66 Cal.App.4th 478, 498 (1998).

AEW purports to cite as "more" a posited failure by Gengas "to conduct any reasonable investigation" to "familiarize themselves with the case" before coming in as co-counsel. Opp. Mem. at 19:24-27. AEW proffers no *evidence* of this – unless one counts that Gengas did not conduct an intrusive forensic examination of their own clients' computers at their expense, which no precedent requires. The standard considers the "reasonable" attorney, and even inadequately investigating the facts in support of one's case does not as a matter of law show malice absent evidence of willfulness. *Daniels*, 182 Cal. App. 4th at 225.[3]

AEW offers no such evidence here. Again, with no support for this essential element of malicious prosecution, AEW cannot show a "probability" of prevailing on its Complaint. *Bertero*, 13 Cal. 3d at 50; Cal. Code Civ. Proc. § 425.16(b)(1).

### 4. AEW cannot properly obtain discovery under the statute.

Filing an anti-SLAPP motion stays all discovery. Cal. Code Civ. Proc. § 425.16(g). It allows the possibility of discovery "on noticed motion and for good cause shown." *Id.* AEW has made no such motion and has demonstrated no such cause, so the Court deny the requested relief. *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219, 1247-48 (2003).

---

[3] *Compare Sycamore Ridge Apartments, LLC v. Naumann*, 157 Cal. App. 4th 1385 (2007), which AEW cites, where attorneys seeking to get their client's security deposit back sent letters to all tenants and then brought an 18-count lawsuit on behalf of all alleging lack of habitable conditions without confirming any of them. The court held that defendant had demonstrated by such evidence a probability of prevailing on its malicious prosecution claim against counsel, and affirmed the trial court's denial of counsel's anti-SLAPP motion. *Id.* at 1392.

Nor could discovery assist AEW. The Genga Defendants acted pursuant to privilege that AEW cannot invade, compelling denial of discovery. *Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 922 (2004).

## IV.   CONCLUSION

Out of anyone, the Genga Defendants do not belong in this case. By suing them, AEW has committed precisely the type of act that the anti-SLAPP statute was enacted to prohibit.

The Genga Defendants acted rightfully, and as legally obliged, in the interest of their clients in the Lincoln Studios Case. AEW shows no lack of probable cause for them to have done so under the standard that "any reasonable attorney" would find the Lincoln Studios Case "totally and completely without merit."

If the evidence ever did so demonstrate, it came after Gengas terminated their representation in the case. If before, their cessation of involvement protects them from malicious prosecution liability. AEW cannot show the Gengas to have *commenced* or *pursued* the Lincoln Studios Case to a termination favoring AEW and with no probable cause.

Nor does AEW make any showing of malice on Gengas' part. All evidence shows that they did their job as the law and ethical rules require, with no improper motive or ill will. The peril that the Complaint poses, potentially chilling the high calling of attorneys in protecting their clients' rights and promoting their interests, requires striking the Complaint against the Genga Defendants.

DATED: May 10, 2019          Respectfully submitted,

　　　　　　　　　　　　　　　　　  /s/  John Genga
　　　　　　　　　　　　　　　　　John M. Genga
　　　　　　　　　　　　　　　　GENGA & ASSOCIATES, P.C.
　　　　　　　　　　　　　　　　Attorneys for Defendants
　　　　　　　　　　　　　　　　GENGA & ASSOCIATES, P.C.
　　　　　　　　　　　　　　　　and JOHN GENGA